UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., a Delaware corporation; and AMAZON.COM SERVICES LLC, a Delaware limited liability corporation,

           Plaintiffs,

    v.

JONATHAN G. MORTON, an individual; ASIN ENTERPRISE MANAGEMENT CONSULTING LTD. CO., a China corporation; SHENZHEN LUNA TECHNOLOGY CO., LTD., a China corporation; HUANHUAN LIAO, an individual; CHENLIANG ZHONG, an individual; GUOLIANG ZHONG, an individual; and DOES 1-10,

           Defendants.

No. 2:24-cv-1471

**COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS (NOS. 6,657,922 AND 6,492,824), DAMAGES, AND EQUITABLE RELIEF**

## I.    <u>INTRODUCTION</u>

1.    This case involves Defendants' coordinated scheme to apply for and obtain fraudulent trademark registrations from the United States Patent and Trademark Office ("USPTO"), and to exploit those fake trademarks to improperly gain access to Amazon's Brand Registry program, an intellectual property-protection service. Brand Registry provides brands that enroll with access to advanced capabilities to find and report infringement violations in Amazon's stores, including the Amazon.com store (the "Amazon Store"). To be eligible for Brand Registry, rightsholders must have an active trademark registration, or in some

circumstances, a pending trademark application. After using fraudulent trademarks to open Brand Registry accounts, certain Defendants submitted false intellectual property infringement notices to Amazon in an effort to remove content and product listings of Amazon selling partners from the Amazon Store.

2.     This deceptive scheme was facilitated by an attorney, Jonathan G. Morton ("Morton"),[1] and a Chinese company, Asin Enterprise Management Consulting Ltd. Co. ("Asin Enterprise"). Together, Morton and Asin Enterprise deceived the USPTO by procuring thousands of fraudulent trademark registrations. Morton and Asin Enterprise both profited from their fraudulent scheme through the collection of fees in exchange for filing fraudulent trademark applications on behalf of their clients and for assisting their clients in gaining access to Brand Registry. Asin Enterprise's collaboration with Morton was designed to circumvent the USPTO's "U.S. counsel rule," which requires all foreign-domiciled trademark applicants to be represented by an attorney who is licensed to practice law in the United States. Morton allowed Asin Enterprise to use his credentials to create the false appearance that the trademark applications were being prepared, reviewed, and filed by a U.S.-licensed attorney. In reality, Morton performed little or no review of the applications, which contained false statements and fake specimens of use. When the USPTO discovered that Morton and Asin Enterprise filed thousands of fraudulent trademark applications, the USPTO temporarily suspended Morton from practicing before the USPTO and issued a Show Cause Order against Asin Enterprise.

3.     Many of Morton's and Asin Enterprise's clients were innocent Amazon selling partners who used the trademark applications and registrations procured by Morton and Asin Enterprise to create at least 3,500 Brand Registry accounts. These selling partners were unfamiliar with the USPTO's rules, were unaware of Morton's and Asin Enterprise's scheme, and unknowingly obtained trademark registrations through fraudulent filings by Asin Enterprise

---

[1] Morton is currently licensed to practice law in New York, and is temporarily suspended from practicing law in Florida because of the scheme alleged in this Complaint. *See The Florida Bar v. Morton*, No. SC22-1574 (suspending Morton's Florida license for 18 months). At the time of the scheme, Morton represented that he maintained a law office in Florida. On information and belief, Morton currently resides in Japan, and resided there during the actions described in this Complaint.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 2

and Morton. On information and belief, many of Morton's and Asin Enterprise's clients would not have used their services had they known that their trademarks were obtained through fraud. In those instances, Morton and Asin Enterprise defrauded their own clients into paying fees for essentially worthless trademark registrations.

4.      A subset of Morton's and Asin Enterprise's clients were bad actors who used their Brand Registry accounts to submit at least 5,400 fraudulent takedown notices in the Amazon Store to attack Amazon's selling partners in an effort to remove their listings from the Amazon Store. In some cases, the victim selling partners' listings were temporarily removed in response to the takedown notices, depriving those selling partners of sales during the time period when the listings were suppressed.

5.      Amazon.com, Inc., and Amazon.com Services LLC (collectively, "Amazon") bring this lawsuit to protect Amazon's selling partners and customers; to prevent and enjoin Defendants from abusing Brand Registry and harming the Amazon Store; to cancel the fraudulent trademark registrations that were used to open Brand Registry accounts and to issue false trademark takedowns; and to hold Defendants accountable for their illegal actions.

6.      Amazon.com Services LLC owns and operates the Amazon Store, and Amazon's affiliates own and operate equivalent international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon entities, while others are sold by Amazon's numerous third-party selling partners. Amazon is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon has invested heavily, both in terms of time and resources, to prevent fraud and abuse in Amazon's stores and to ensure the quality and authenticity of the products available in Amazon's stores.

7.      As part of this mission, and consistent with the notice-and-takedown procedure set forth in the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, Amazon has developed a suite of intellectual property-protection mechanisms for rightsholders to submit

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 3

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

requests for removal of content that they believe violates their intellectual property rights. One of Amazon's intellectual property-protection services is Brand Registry. Amazon also invests heavily to protect its third-party selling partners and to ensure that Amazon's intellectual property-protection measures are not abused by bad actors, so that listings of non-infringing products remain active and available for purchase by Amazon's customers.

8.    On or about March 26, 2021, Morton and Asin Enterprise filed a fraudulent application to register the trademark "Futaiphy" with USPTO Application Serial Number 90604827 (the "Futaiphy Trademark")[2] on behalf of Defendants Shenzhen Luna Technology Co., Ltd. ("Shenzhen Luna"), and Huanhuan Liao ("Liao") (together, the "Futaiphy Defendants"). The Futaiphy Defendants used the application for the Futaiphy Trademark to improperly gain access to Brand Registry and use Amazon's notice-and-takedown procedures to target and remove content from product listings in the Amazon Store, even though the content and listings did not infringe any intellectual property rights owned by the Futaiphy Defendants.

9.    On or about December 11, 2020, Morton and Asin Enterprise filed a fraudulent application to register the trademark "Tfnyct" with USPTO Application Serial Number 90376905 (the "Tfnyct Trademark")[3] on behalf of Defendants Chenliang Zhong ("Chen Zhong") and Guoliang Zhong ("Guo Zhong," together with Chen Zhong, the "Tfnyct Defendants," and with the Futaiphy Defendants, the "False Takedown Defendants"). The Tfnyct Defendants used the application for the Tfnyct Trademark to improperly gain access to Brand Registry and use Amazon's notice-and-takedown procedures to target and remove content from product listings in the Amazon Store, even though the content and listings did not infringe any intellectual property rights owned by the Tfnyct Defendants. The Futaiphy Trademark and the Tfnyct Trademark are but two examples of the thousands of fraudulent trademark applications that Morton and Asin Enterprise facilitated to help their clients access Brand Registry.

---

[2] This application later matured into Registration Number 6,657,922.
[3] This application later matured into Registration Number 6,492,824.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 4

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

10.     Despite Amazon's efforts to curb this type of abuse, in limited circumstances the False Takedown Defendants' scheme worked, and materials related to some product listings were temporarily taken down from the Amazon Store in response to the False Takedown Defendants' invalid and fraudulent complaints, resulting in losses to victim selling partners. Defendants' willful deception has resulted in direct harm to Amazon, which has expended significant resources in investigating and addressing Defendants' wrongdoing. Defendants' actions have also caused financial harm to Amazon's selling partners, and their illicit conduct threatens to undermine customer trust in the Amazon Store as a store with a wide selection of products and the best prices.

11.     Amazon brings this lawsuit to hold Defendants accountable and to prevent Defendants from inflicting future harm on Amazon, its selling partners, and its customers. In addition, Amazon seeks cancellation of the fraudulent registrations for the Tfnyct Trademark and Futaiphy Trademark that Defendants used to improperly gain access to Brand Registry and to issue false trademark infringement notice-and-takedowns in the Amazon Store.

## II.     PARTIES

12.     Amazon.com, Inc. is a Delaware corporation with its principal place of business located in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

13.     On information and belief, Defendant Morton is an individual who currently resides in Tokyo, Japan. Morton participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint related to the applications to file the Futaiphy Trademark, the Tfnyct Trademark, and at least 221 other fraudulent trademark applications that were used to submit abusive takedowns in the Amazon Store. Specifically, Defendant Morton was listed as attorney of record in the USPTO applications to register these marks. However, Morton did not actually prepare, review, or sign the vast majority of these applications. Instead, Morton allowed Defendant Asin Enterprise to prepare and/or file these applications on his behalf with minimal or no oversight.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 5

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

14.     Defendant Asin Enterprise is a Chinese corporation that participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint related to the applications to file the Futaiphy Trademark, the Tfnyct Trademark, and at least 221 other fraudulent trademark applications that were used to submit abusive takedowns in the Amazon Store. Specifically, Defendant Asin Enterprise had an agreement with Morton to use Morton's name and credentials to file USPTO applications to register trademarks, even though Morton did not prepare, review, or sign the vast majority of the trademark applications. Instead, Defendant Asin Enterprise or its agents prepared the applications with minimal or no oversight from Morton.

15.     Defendant Shenzhen Luna is a Chinese corporation that participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint related to the Futaiphy Trademark, and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Shenzhen Luna is the owner of the Futaiphy Trademark according to the USPTO's records. Defendant Shenzhen Luna registered and was responsible for the Amazon selling account named "Lunakj" (the "Lunakj Selling Account") that was used to create the Amazon Brand Registry account bearing account number 1113755, for which the Futaiphy Trademark was added on or about April 2, 2021 (the "Futaiphy Brand Registry Account"). On information and belief, Defendant Shenzhen Luna acted in concert with the other Futaiphy Defendants in operating the Futaiphy Brand Registry Account and the Lunakj Selling Account. On further information and belief, Shenzhen Luna acted in concert with Morton, Asin Enterprise, and the other Futaiphy Defendants to fraudulently register the Futaiphy Trademark.

16.     Defendant Liao is an individual residing in China who participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint related to the Futaiphy Trademark, and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Liao was responsible for the Lunakj Selling Account, which was used to create the Futaiphy Brand Registry Account. On information and belief,

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 6

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Defendant Liao acted in concert with the other Futaiphy Defendants in operating the Futaiphy Brand Registry Account and the Lunakj Selling Account. On further information and belief, Liao acted in concert with Morton, Asin Enterprise, and the other Futaiphy Defendants to fraudulently register the Futaiphy Trademark.

17.     Defendant Chen Zhong is an individual residing in China who participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint related to the Tfnyct Trademark, and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Chen Zhong is the owner of the Tfnyct Trademark according to the USPTO's records. Defendant Chen Zhong registered and was responsible for the Amazon selling account named "BDliccs" (the "BDliccs Selling Account"),[4] which was used to create the Amazon Brand Registry account bearing account number 938407, for which the Tfnyct Trademark was added on or about December 22, 2020 (the "Tfnyct Brand Registry Account"). On information and belief, Defendant Chen Zhong acted in concert with the other Tfnyct Defendants in operating the Tfnyct Brand Registry Account and the BDliccs Selling Account. On further information and belief, Chen Zhong acted in concert with Morton, Asin Enterprise, and the other Tfnyct Defendants to fraudulently register the Tfnyct Trademark.

18.     Defendant Guo Zhong is an individual residing in China who participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint related to the Tfnyct Trademark, and derived a direct financial benefit from that wrongful conduct. Specifically, Defendant Guo Zhong was responsible for the BDliccs Selling Account that was used to create the Tfnyct Brand Registry Account. On information and belief, Defendant Guo Zhong acted in concert with the other Tfnyct Defendants in operating the Tfnyct Brand Registry Account and the BDliccs Selling Account. On further information and belief, Guo Zhong acted in concert with Morton, Asin Enterprise, and the other Tfnyct Defendants to fraudulently register the Tfnyct Trademark.

---

[4] Defendant Chen Zhong registered the BDliccs Selling Account through a Chinese company he controls, Quanzhou Lianzhi Trading Co., Ltd.

19.     On information and belief, Doe Defendants 1-10 (the "Doe Defendants") are individuals and entities working in active concert with each other, and the False Takedown Defendants, Asin Enterprise, and/or Morton to prepare and submit fraudulent trademark applications to the USPTO for the purpose of helping bad actors improperly gain access to Brand Registry, and/or to prepare and submit false takedown requests to Amazon. On further information and belief, the Doe Defendants are working in active concert with each other, and Defendants Morton and Asin Enterprise to prepare and file fraudulent trademark applications with the USPTO. The identities of the Doe Defendants are currently unknown to Amazon.

20.     Defendants Morton, Asin Enterprise, the False Takedown Defendants, and the Doe Defendants are collectively referred to as "Defendants."

### III.     JURISDICTION AND VENUE

21.     The Court has subject matter jurisdiction over Amazon's claim under Title II of the DMCA, 17 U.S.C. § 512 (First Claim) pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's claims for common law torts under Washington law (Second through Fifth Claims) pursuant to 28 U.S.C. §§ 1332 and 1367. The Court has subject matter jurisdiction over Amazon's Lanham Act claims for cancellation (Sixth Claim) and civil liability for false or fraudulent registration (Seventh Claim) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

22.     The Court has personal jurisdiction over Defendants because they intentionally committed tortious acts directed to the State of Washington, resulting in harm to Amazon in Washington, and Amazon's claims arise from those activities.

23.     The False Takedown Defendants affirmatively sought and used the services of Amazon, a corporation with its principal place of business in Washington, through Amazon's Brand Registry program. Each Defendant committed, or facilitated the commission of, tortious acts directed at Washington and has wrongfully caused Amazon substantial injury in Washington.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 8

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

24.     Specifically, the False Takedown Defendants created and/or used Brand Registry accounts, and in doing so, entered into binding and enforceable agreements with Amazon in Washington by accepting the Brand Registry Terms of Use. The False Takedown Defendants used their Brand Registry Accounts to direct fraudulent conduct at Amazon in Washington, including by falsely asserting to Amazon that they possessed intellectual property rights in content and products listed in the Amazon Store.

25.     Defendants Morton and Asin Enterprise similarly acted in concert to commit, or facilitate the commission of, tortious acts directed at Washington, and each has wrongfully caused Amazon substantial injury in Washington. Morton and Asin Enterprise knew and intended that the fraudulent trademark applications they facilitated on behalf of their clients, including without limitation the False Takedown Defendants, would be used to improperly open Brand Registry accounts. In fact, in the course of assisting their clients in opening Brand Registry accounts, Defendants Morton and Asin Enterprise received registration codes at the email addresses provided for the attorney of record for the trademark applications in the USPTO's records, including without limitation at the email addresses associated with the Futaiphy and Tfnyct Trademarks. Defendants Morton and/or Asin Enterprise then sent the respective codes to their clients, including without limitation bad actors such as the False Takedown Defendants, so their clients could complete the Brand Registry registration process using the fake trademarks that Morton and Asin Enterprise procured. On information and belief, Morton and Asin Enterprise knew that certain of their clients were bad actors who were improperly opening Brand Registry accounts in order to engage in abusive conduct targeting the Amazon Store, including by issuing false takedown notices.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 9

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

27.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) injuries giving rise to the suit occurred, and (c) Defendants directed their unlawful conduct.

## IV.     FACTUAL BACKGROUND

### A.     The DMCA's Notice-And-Takedown Procedure, 17 U.S.C. § 512

28.     In 1998, Congress passed the DMCA "to facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education in the digital age." S. Rep. No. 105-190, at 1-2. Given the nature of the internet, online service providers often are not in the best position to make sophisticated judgments about the nature or legality of the materials that users post or contribute. Online services often lack necessary information (for example, information about the existence of licenses between their users and rightsholders) to make determinations about whether material posted to a website infringes lawfully held copyrights. Understanding this, Congress struck a careful balance with the DMCA between protecting the legitimate rights of copyright owners against the incidence of online infringement while fostering the development and growth of internet services, by creating a safe harbor from copyright infringement claims for service providers that meet certain conditions.

29.     In particular, Title II of the DMCA, 17 U.S.C. § 512(c), provides a "notice-and-takedown" framework that gives rightsholders and online service providers both procedural consistency and legal certainty in how complaints of copyright infringement based on user content are handled. This framework relies on those asserting exclusive rights under copyright to provide particularized details about their claims of infringement, including an assurance under penalty of perjury that the complaining party is authorized to act on behalf of the owner of an exclusive right, and a statement that the submitter has a good faith belief that the complained-of use of the copyrighted content is not authorized. Recognizing that service providers are intermediaries and cannot, and should not, be required to make difficult legal determinations about the status of copyrights and content, the DMCA's notice-and-takedown framework places

the burden on those asserting rights—who are better positioned to know the facts relating to copyright ownership and infringement—to submit notifications of claimed infringement that contain certain elements. 17 U.S.C. § 512(c)(3)(A). In turn, Subsection 512(c) of the DMCA offers service providers that host content posted by third parties certain protections from copyright liability for third-party content if, in addition to meeting other conditions, the service provider expeditiously removes or disables access to materials complained of in compliant notifications. 17 U.S.C. § 512(c)(1). Indeed, an intermediary risks losing protection under the DMCA safe harbor protection if it receives, but does not expeditiously act upon, a notification claiming infringement that contains substantially all of the specified elements, discussed below.

30.    To be effective under the DMCA, a notification of claimed infringement must be submitted in writing by a person authorized to act on behalf of the owner of the rights that are allegedly being infringed, and it must contain certain elements. 17 U.S.C. § 512(c)(3)(A). The elements of a DMCA-compliant notification of claimed infringement are:

a.    A signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(i).

b.    Identification of the copyrighted work claimed to have been infringed. 17 U.S.C. § 512(c)(3)(A)(ii).

c.    Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. 17 U.S.C. § 512(c)(3)(A)(iii).

d.    Information reasonably sufficient to permit the service provider to contact the complaining party. 17 U.S.C. § 512(c)(3)(A)(iv).

e.    A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law. 17 U.S.C. § 512(c)(3)(A)(v).

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 11

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

f.      A statement that the information in the notification is accurate, and under penalty

of perjury, that the complaining party is authorized to act on behalf of the owner

of an exclusive right that is allegedly infringed. 17 U.S.C. § 512(c)(3)(A)(vi).

31.     The DMCA specifically requires rightsholders to support their claims of

infringement with statements made under penalty of perjury, and it relies on the accuracy of the

notifications that persons making assertions of copyright infringement submit to service

providers. Accordingly, neither the DMCA's notice-and-takedown framework, nor its conditions

for safe-harbor protections, require a service provider proactively to monitor its service or

affirmatively to seek facts indicating infringing activity. 17 U.S.C. § 512(m).

32.     The DMCA also protects the service providers' reasonable expectations that they

will not be subjected to fraudulent takedown requests. In particular, the DMCA provides a cause

of action to any service provider that is injured due to knowing, material misrepresentations in a

notification of allegedly infringing material: "Any person who knowingly materially

misrepresents under this section . . . that material or activity is infringing . . . shall be liable for

any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is

injured by such misrepresentation, as the result of the service provider relying upon such

misrepresentation in removing or disabling access to the material or activity claimed to be

infringing . . . ." 17 U.S.C. § 512(f).

**B.      Amazon's Systems for Protecting Rightsholders and Processing Takedown Requests**

33.     Amazon works hard to make the Amazon Store a place where customers can

conveniently select from a wide array of authentic and non-infringing products at competitive

prices.

34.     Amazon respects intellectual property rights and invests substantial resources to

ensure that when customers make purchases through the Amazon Store, either directly from

Amazon or from one of its millions of selling partners, customers receive non-infringing

products made by the true manufacturer of those products. In 2023 alone, Amazon invested over

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 12

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

$1.2 billion and employed more than 15,000 people to protect its stores from counterfeits, fraud and other forms of abuses. Amazon stopped over 700,000 suspected bad-actor selling accounts before they published a single listing for sale.

35.    In 2017, Amazon launched Amazon Brand Registry, a free service that offers rightsholders an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. To be eligible for Brand Registry, rightsholders must have an active trademark registration, or in some circumstances, a pending trademark application.[5] Brand Registry delivers automated brand protections that use machine learning to predict potential infringement and offers registered brands tools to proactively protect their intellectual property. Brand Registry also offers participants enhanced search utilities that use state-of-the-art image search technology to search for and report potentially infringing product listings more easily. Brand Registry further provides rightsholders a streamlined procedure for reporting instances of alleged infringement, including trademark and copyright infringement, using the "Report a Violation" tool.

36.    Consistent with the notice-and-takedown procedures set forth in the DMCA, Amazon has developed multiple mechanisms for copyright owners to submit notifications of copyright infringement. The three main methods are (1) by notifying Amazon's Copyright Agent in writing;[6] (2) if the copyright owner has an Amazon account, by submitting notice via Amazon's Report Infringement form;[7] and (3) if the copyright owner has a Brand Registry account, by using Amazon's "Report a Violation" Tool.

37.    Pursuant to the DMCA, regardless of the notification method, Amazon asks copyright owners or their agents submitting written notifications of infringement to include both "[a] statement by you that you have a good-faith belief that the disputed use is not authorized by

---

[5] The detailed eligibility requirements for Brand Registry are accessible at https://brandservices.amazon.com/brandregistry/eligibility.

[6] Rightsholders need not have an Amazon customer, seller, or Brand Registry account in order to submit notices of claimed copyright infringement to Amazon's Copyright Agent.

[7] https://www.amazon.com/report/infringement/signin. A printout of a blank Report Infringement form for a copyright complaint is attached as **Exhibit A** to this Complaint.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 13

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

the copyright owner, its agent, or the law" and "[a] statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf."

38.    For example, before submitting a takedown request through the "Report Infringement" form or Amazon's Brand Registry "Report a Violation" tool, the submitter must read and affirm the following statements:

a.    "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

b.    "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

c.    "I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s)."

39.    When Amazon receives a notice of claimed copyright infringement, it confirms that the notice contains the elements required by the DMCA and, if appropriate, expeditiously removes the content that allegedly infringes the purported copyright owner's rights, both to comply with the DMCA and to protect the interests of legitimate rightsholders. This can lead to the removal of entire product listings, or materials appearing in product listings (such as product images), from the Amazon Store unless and until the seller takes the appropriate steps to have what was removed reinstated.

40.    As an online service provider, Amazon often must rely on the accuracy of the statements submitted by purported rightsholders, particularly as copyrights are often unregistered.

41.    Some bad actors, however, have sought to abuse Amazon's reporting and takedown processes to seek removal of materials from product listings even if they have no valid

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

rights to assert. For example, some bad actors send Amazon takedown requests that falsely accuse a product listing of infringing the bad actor's purported copyright.

42.    One tactic that bad actors use to appear as legitimate rightsholders involves creating fake, disposable websites, with images scraped from the Amazon Store, and then submitting takedown requests that falsely claim copyright ownership over the scraped images. The bad actors then submit copyright complaints against those same product listings, presenting the URLs for the "dummy" websites, and the scraped images, as purported evidence that those product listings infringe the bad actors' protected copyrights.

43.    Amazon also allows rightsholders to report listings that violate their trademark rights, including through Amazon's Report Infringement form and Amazon's Brand Registry "Report a Violation" tool. Amazon handles and processes notices of trademark infringement for products listed for sale in the Amazon Store in a similar manner to how it handles notices of copyright infringement, as set forth above. Once Amazon receives a report that a product or listing infringes on a rightsholder's trademark, Amazon will review that claim and determine the appropriate response to protect the rightsholder, the Amazon Store, and its customers.

44.    Another tactic bad actors use to take advantage of Amazon's intellectual property infringement policies is to report non-infringing listings and falsely claim the listings violate their trademark rights, which can involve tampering with product listings to falsely insert trademarks into the product images or descriptions prior to submitting trademark complaints.

45.    Bad actors may use these tactics as a way of attacking and fraudulently suppressing or altering listings for others' products so that consumers are more likely to buy the same products from the bad actors or their affiliates, rather than from the victim selling partners who are the subject of the attacks. Indeed, a fraudulent assertion of an intellectual property violation can be indistinguishable from a legitimate one, and may trigger Amazon's obligations to remove the product listing from the Amazon Store. To the extent that a false assertion of infringement results in the removal of content from accused product listings, however temporarily, that unlawful and expressly prohibited conduct undermines the trust that customers,

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 15

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

sellers, and manufacturers place in Amazon and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon. This false assertion also harms Amazon selling partners, whose ability to sell their products in the Amazon Store is adversely impacted when their listings are removed.

46.    Amazon innovates on behalf of customers and selling partners to improve Amazon's notice-and-takedown processes, and to combat abuse. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to help ensure that legitimate sellers and product listings remain in the Store despite the efforts of bad actors to abuse the notice-and-takedown framework for intellectual property violations and to exploit Amazon's systems.

47.    In addition to these measures, Amazon actively cooperates with rightsholders and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits like this one are integral components of Amazon's efforts to combat improper and fraudulent takedown schemes.

**C.    Process for Opening A Brand Registry Account.**

48.    Signing up for Brand Registry requires several affirmative actions on the part of the applicant, including acceptance of the Brand Registry Terms of Use.

49.    When a person applies to participate in Brand Registry, Amazon presents them with the following screen:

**Terms of Use**

**Amazon Brand Registry Terms of Use**

We want every brand to join and use Brand Registry, so we have modified these Terms to make them as simple as possible.  Effective 4/25/2020, the following terms apply to your use of Brand Registry:

1. You represent that you own or are authorized by the brand to act on behalf of any brands you register in Brand Registry.
2. You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry.
3. The Conditions of Use associated with your Amazon account will not apply to your use of Brand Registry.

Go back    Accept and continue

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 16

50.     As shown above, the Brand Registry enrollment screen requires the applicant to read and affirm the following statement: "You agree that you will provide information that is accurate and truthful to the best of your knowledge in connection with the use of Brand Registry."

51.     Additionally, to be eligible for a Brand Registry account, a rightsholder must demonstrate that they have an active trademark registration or, in some circumstances, a pending trademark application. In order to verify that the Brand Registry account applicant has an active trademark registration or pending trademark application, Amazon sends a registration code to the email address or addresses provided for the attorney of record for the trademark holder or applicant, as those email address or addresses appears in the USPTO's records. Brand Registry applicants can only complete their enrollment if they provide this registration code to Amazon to confirm their ownership of the trademark registration or application they have identified.

**D.     Asin Enterprise and Morton Procured Fraudulent Trademark Applications and Registrations In Order To Facilitate the Creation of Brand Registry Accounts and the Issuance of Fraudulent Takedowns in the Amazon Store.**

**Asin Enterprise.**

52.     Asin Enterprise and Morton, acting both jointly and independently, facilitated the improper opening of Brand Registry accounts and the issuance of fraudulent takedown notices and other abuses of Brand Registry, on behalf of bad actors who abused Brand Registry and Amazon's stores, including without limitation the False Takedown Defendants.

53.     Asin Enterprise is a China-based entity that sells U.S. trademark registration services. On information and belief, Asin Enterprise's client base consists primarily of businesses and individuals in China with Amazon selling accounts who are seeking a trademark registration in order to gain access to Brand Registry. Indeed, the word "Asin" in the company's name reflects that the company is specifically marketing its services to sellers in Amazon's stores. "ASIN" is an abbreviation that Amazon uses to refer to "Amazon Standard Identification Number," which is a unique series of ten alphanumeric characters that is assigned to each product listed for sale in Amazon's stores for identification. Moreover, Asin Enterprise's website

(asintm.com) actively targets Amazon sellers, falsely describing itself as a "gold medal intellectual property partner of Amazon,"[8] and Asin Enterprise promotes Brand Registry through its social media accounts.

54.     Asin Enterprise is responsible for, both directly as well as through its agents such as Morton, filing thousands of USPTO trademark applications on behalf of its clients and assisting with Brand Registry applications of a substantial number of its clients.

55.     Asin Enterprise's trademark registration activities directed at Amazon have been systematic and continuous. At least 3,500 of Asin Enterprise's fraudulent trademark applications resulted in Brand Registry applications. Thus, Asin Enterprise received over 3,500 emails from Amazon with Brand Registry codes, and thus knew its clients were using their trademark registration services to gain entry to Brand Registry. On information and belief, Asin Enterprise knew that its clients were using the trademark applications they filed to sell products in the Amazon Store because a large number of the specimens depicting use of the marks in commerce that were prepared by Asin Enterprise and filed with the USPTO purported to show use of the trademarks in the Amazon Store.

56.     The USPTO requires all foreign-domiciled trademark applicants to be represented by an attorney who is licensed in the United States. See 37 C.F.R. § 2.11(a); 84 F.R. 31498. Foreign applicants may not circumvent this "U.S. Counsel Rule" by hiring a U.S.-licensed lawyer who has minimal or no participation in the trademark application process. *See* 37 C.F.R. §§ 11.101, 11.103, 11.503, 11.505, 11.804(c).

57.     In 2019, the USPTO promulgated the U.S. Counsel Rule "in response to the increasing problem of foreign trademark applicants who purportedly are pro se . . . and who are filing inaccurate and possibly fraudulent submissions that violate the Trademark Act (Act) and/or the USPTO's rules." Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants, 84 Fed. Reg. 127 (July 2, 2019) (codified at 37 CFR Parts 2, 7, and 11). The USPTO found that "foreign applicants file applications claiming use of a mark in commerce, but

---

[8] This quotation has been translated from Chinese to English.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 18

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

frequently support the use claim with specimens that indicate the mark may not actually be in use," often "on the advice, or with the assistance, of foreign individuals and entities who are not authorized to represent trademark applicants before the USPTO." *Id.* The prevalence of fraudulent filings by foreign applicants "undermines the accuracy and integrity of the U.S. trademark register and its utility as a means for the public to reliably determine whether a chosen mark is available for use or registration, and places a significant burden on the trademark examining operation." *Id.*

58.     Moreover, "the U.S. Counsel Rule helps [the USPTO] determine whether or not the applicant is indeed a real person who either lives or has authorized representation in the United States." USPTO Director's Blog, How the Domicile Address Requirement Advances Our Trademark Anti-Fraud Efforts, by Dave Gooder, Commissioner for Trademarks, published on August 30, 2023.[9] Nonetheless, the USPTO still faces "determined scammers" who seek to evade the USPTO's requirement for a valid domicile address and the U.S. Counsel Rule. *Id.* As such, since 2019, the USPTO has issued numerous sanctions orders and terminated thousands of invalidly filed applications. *Id.* The USPTO has further sought the help of stakeholders in the trademark community to support its efforts in stopping this fraud and abuse. *Id.*

59.     According to a December 13, 2022 Show Cause Order issued by the USPTO to Asin Enterprise and its two principals ("Show Cause Order"), Asin Enterprise and Morton operated a scheme intended to circumvent the U.S. Counsel rule by filing fraudulent trademark applications and violating the USPTO's trademark rules of practice.[10] The gravamen of the Show Cause Order is the USPTO's findings that Defendant Asin Enterprise engaged in the unauthorized practice of law, and that it provided false information in trademark submissions to the USPTO for improper purposes and without conducting a reasonable inquiry into the evidentiary support for such submissions and/or with the intent to circumvent the USPTO's rules.

---

[9] Accessible at https://www.uspto.gov/blog/director/entry/how-the-domicile-address-requirement.

[10] Accessible at https://developer.uspto.gov/tm-decisions-api/download/7f5d04d1-89df-3634-a6a8-5bb9d9adf21e.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 19

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

60.     The scheme began in 2019 when Asin Enterprise and Morton entered into an agreement through which Morton would hold himself out as the attorney of record on Asin Enterprise's clients' trademark applications filed with the USPTO in order to satisfy the U.S. Counsel Rule.

61.     As detailed in the Show Cause Order, despite Asin Enterprise's and Morton's knowledge of the U.S. Counsel Rule, Asin Enterprise filed and prosecuted thousands of trademark applications independently, without the required assistance of Morton or any other U.S.-licensed attorney. With Morton's knowledge and approval, Asin Enterprise filed many of these applications under Morton's name and credentials, but without Morton's input or review of those filings, in violation of the USPTO's rules. These trademark filings were false and fraudulent because they purported to be signed and filed by Morton, when in fact Asin Enterprise filed and signed such documents. In some cases, Morton may have filed the trademark applications prepared by Asin Enterprise, but he performed minimal or no review of the contents of such applications.

62.     The USPTO found that Asin Enterprise willfully provided false information in trademark submissions to the USPTO in an effort to circumvent the USPTO's rules. Specifically, Asin Enterprise improperly submitted applications bearing Morton's credentials "so close in time as to render it essentially impossible for one person to accomplish." For example, on April 30, 2021, Asin Enterprise filed a response to an office action using Morton's credentials in 18 different trademark applications in the span of 10 minutes.

63.     As a result, the USPTO concluded that Asin Enterprise engaged in the widespread unauthorized practice of law when it submitted fraudulent trademark applications under various attorneys' names, including Morton's. On information and belief, even after the Show Cause Order issued, Asin Enterprise has continued to work with other U.S.-licensed attorneys to submit fraudulent trademark registrations to the USPTO.

64.     Each trademark application must include a declaration attesting, among other things, that (i) the mark is in use in commerce as of the filing date of the application on the goods

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 20

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

and/or services listed in the application as shown in the specimen filed with the application; (ii) to the best of the signatory's knowledge and belief, the facts recited in the application are accurate; and (iii) to the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions contained in the application have evidentiary support. In many instances, these attestations in Asin Enterprise's trademark applications were false, as Asin Enterprise submitted false specimens of use that it either fabricated itself, or that it received from its clients without performing any diligence to evaluate if the specimens were legitimate, and if the marks applied for were actually being used in commerce.

65.     The USPTO found that Asin Enterprise submitted false, "mock-up" specimens of use in connection with the applications it filed using Morton's and other U.S.-licensed attorneys' credentials, and that Asin Enterprise failed to perform any reasonable inquiry to determine if the specimens were legitimate, and if the marks applied for were actually being used in commerce, as was attested to in the declarations it caused to be submitted. In one example cited by the USPTO, the specimen of use displayed a purchase by the fictional character Homer Simpson using the character's fictional address in Springfield.

66.     With respect to at least some of the fraudulent specimens filed by Asin Enterprise on behalf of its clients, Asin Enterprise used an online storefront on Aliexpress.com that purported to show sales to U.S. customers. For example, Asin Enterprise created fake specimens using an online storefront on Aliexpress.com under the name "Shop910796038 Store."[11] On information and belief, this was a dummy storefront that Asin Enterprise used to create fake orders of its clients' products to demonstrate to the USPTO that products bearing its clients' trademarks were sold in commerce in the U.S. On further information and belief, these specimens were fabricated by Asin Enterprise, as they contained false address information for the purported customers, with street addresses that do not exist, or zip code information that does

---

[11] Accessible at https://www.aliexpress.com/store/1101551778.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 21

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

not match the purported state and city of the customer. These facts suggest that the Shop910796038 Store was a "fraudulent specimen farm" website per USPTO criteria.[12]

67.     In other instances, Asin Enterprise created fake specimens of products that purported to show sales in the Amazon Store. For example, on March 18, 2019, Asin Enterprise filed an application to register the mark BRJ for electric toothbrushes, among other goods (Serial No. 88343617). The specimen filed with that application included a screenshot of an electric toothbrush listed for sale in the Amazon Store with ASIN B07PS53DZW. However, Amazon's records show that no product with that ASIN was listed for sale on or before March 18, 2019, and thus the specimen was fabricated. Similarly, on March 22, 2019, Asin Enterprise filed an application to register the mark XDS for electric toothbrushes, among other goods (Serial No. 88351539). The specimen filed with that application was nearly identical to the specimen for the BRJ trademark, and included a screenshot of an electric toothbrush listed for sale in the Amazon Store with ASIN B07PVCCSY6. However, Amazon's records show that no product with that ASIN was listed for sale on or before March 22, 2019, and thus the specimen was fabricated.

68.     The Show Cause Order set forth the following potential sanctions for Asin Enterprise: (1) a permanent ban on Asin Enterprise submitting trademark-related documents to the USPTO; (2) removal of all correspondence information associated with Asin Enterprise from the USPTO database; (3) all submissions associated with Asin Enterprise stricken or given no weight; (4) termination of all ongoing application and registration proceedings associated with Asin Enterprise; and (5) a block of future financial transactions from credit cards associated with improper submissions by Asin Enterprise.

69.     The Show Cause Order listed more than 5,000 unique trademarks filed by Asin Enterprise, including the Futaiphy and Tfnyct Trademarks. Amazon has determined that at least 3,500 fraudulent trademark registrations filed by Asin Enterprise and Morton were used to open

---

[12] USPTO notice related to "specimen farms," accessible at: https://www.uspto.gov/trademarks/protect/challenge-invalid-specimens. Per the USPTO, "specimen farms" are e-commerce websites "made up of webpages created to display hundreds of products with various trademarks that appear to be for sale" that are used "solely for the purpose of creating specimens to attempt to meet the USPTO's application specimen requirement."

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 22

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Brand Registry accounts, a subset of which Amazon has confirmed were engaged in abusive takedowns.

70.    On information and belief, many of Asin Enterprise's trademark applications were filed on behalf of innocent Amazon selling partners who sought to use their trademarks in the Amazon Store, including through Brand Registry. These selling partners were unfamiliar with the USPTO's rules, and unaware that Asin Enterprise had obtained trademark registrations on their behalf using fraudulent specimens and through the fraudulent use of U.S. attorneys' credentials in violation of the USPTO's rules. In those instances, Asin Enterprise defrauded its own clients into paying fees for essentially worthless trademark registrations.

71.    Amazon also determined that Asin Enterprise itself is the owner or former owner of 26 trademarks registered with the USPTO, three of which were used to open Brand Registry accounts.

72.    In summary, Asin Enterprise engaged in a widespread practice of facilitating false and fraudulent trademark filings with the USPTO by representing that the filings were made by a U.S.-based attorney, such as Morton, when that was not the case, and by filing fraudulent specimens and false declarations attesting to the veracity of those fraudulent specimens. Of the thousands of trademark applications for which Asin Enterprise was responsible, Amazon has confirmed that at least 221 were used to open Brand Registry Accounts that subsequently filed fraudulent takedowns of content and product listings in the Amazon Store, totaling over 5,400 fraudulent notices of infringement.

**Jonathan Morton.**

73.    Morton's and Asin Enterprise's trademark registration activities directed at Amazon were systematic and continuous. As described above, in 2019, Asin Enterprise entered into an agreement with Morton to serve as attorney of record on USPTO filings that were issued on behalf of Asin Enterprise's clients. Between 2019 and 2022, Morton was listed as the attorney of record for nearly 32,000 trademark applications filed with the USPTO, many of which were filed on behalf of Asin Enterprise's clients. As mentioned above, the owners of at least 3,500 of

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 23

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

those marks applied for a Brand Registry Account, and of those, Amazon has confirmed that at least 221 of the marks were used to file false and abusive takedowns of content in the Amazon Store.

74.     On information and belief, Morton was aware that a substantial number of his and Asin Enterprise's clients sought to obtain entry to Brand Registry. Morton was listed as the attorney of record associated with email addresses in USPTO records that received more than 3,500 emails from Amazon with Brand Registry codes pursuant to applications made by Morton's clients to open Brand Registry accounts. On further information and belief, Morton knew that many of his and Asin Enterprise's clients sold or intended to sell products in the Amazon Store because a large number of the trademark applications submitted by Morton and Asin Enterprise included specimens of use that purported to show use of the trademarks in the Amazon Store.

75.     As part of the USPTO disciplinary proceedings discussed below, Morton admitted that his usual practice as attorney of record was to briefly review (for 2 to 10 minutes) trademark applications prepared by third parties, including Asin Enterprise, before filing them. At times, Morton allowed third-party "trademark-filing agencies," including Asin Enterprise, to file the applications under his name using his USPTO account. Morton has acknowledged that although he is listed as the attorney of record on these applications, he did not perform the legal work required of the attorney of record under USPTO rules of practice for any trademark applications filed by Asin Enterprise. Rather, Asin Enterprise prepared and filed applications on its clients' behalf, while deceptively using Morton's name and credentials. Morton had no contact with his clients—the purported trademark owners—and he performed little to no diligence with respect to the trademark applications or the associated specimens of use that were filed under his name.

76.     Specifically, Morton admitted to the USPTO that before filing trademark applications or associated specimens, he typically did not conduct an independent investigation to determine whether the applications he submitted properly depicted the mark used in commerce. Morton also admitted that, despite not conducting basic due diligence, he routinely

signed declarations attesting that the trademarks in each application were used in commerce in connection with the goods listed in the application, and that the specimens of use accurately showed this use in commerce, and further attesting that he performed a reasonable inquiry under the circumstances as the basis for those attestations. In reality, Morton often performed *no* inquiry into whether the applied-for marks were actually being used in commerce or whether the specimens legitimately showed actual use in commerce.

77.    On April 29, 2022, the USPTO's Director of the Office of Enrollment and Discipline issued a Final Order issuing sanctions against Morton and suspending him from practice before the USPTO for two years for, among other misconduct, assisting in the unauthorized practice of law and engaging in conduct involving dishonesty or that is prejudicial to the administration of justice (the "Sanctions Order").[13]

78.    The Sanctions Order found that Morton breached six of the USPTO's rules of professional conduct when he:

- accepted a large volume of clients such that he could not devote sufficient time to review their trademark filings and did not have a system in place to check for conflicts of interest (37 CFR § 11.101);
- failed to devote sufficient time to client matters and failed to adequately review trademark applications, including failing to properly review specimens-of-use to confirm the mark showed actual use in commerce (37 CFR § 11.103);
- allowed non-practitioners to prepare and file trademark documents with the USPTO on behalf of clients without properly vetting such documents prior to their filings (37 CFR § 11.503);
- did not adequately review legal work performed by his non-practitioner assistant before documents were signed and filed with the USPTO (37 CFR § 11.505);
- signed declarations attesting that clients' marks were in use in commerce (or that the specimen showed such use in commerce) but had not always performed a reasonable inquiry to check if that was accurate (37 CFR § 11.804(c)); and
- engaged in 'other conduct' that adversely reflected on fitness to practice before the agency in trademark matters (37 CFR § 11.804(i)).

---

[13] Accessible at https://foiadocuments.uspto.gov/oed/Morton-Final-Order-D2022-07.pdf.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 25

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

79.     On information and belief, Morton also allowed agents at Asin Enterprise to submit trademark filings on his behalf without performing any review of the filings whatsoever. Indeed, the Show Cause Order stated that "[a] representative sample of filings from April 30, 2021 shows Mr. Morton's electronic signature being entered on 18 Response to Office Action forms within ten minutes, an unlikely feat for any attorney to accomplish." In other cases, Morton performed minimal review that could not have reasonably allowed him to determine whether the applied for mark was actually being used in commerce or whether the specimens legitimately showed actual use in commerce. For example, numerous applications submitted by Morton used fraudulent specimens from the same purported storefront (Shop910796038 Store). Had Morton performed a diligent review of the specimens, he would have recognized that the specimens showing products for sale in that storefront were fabricated, that the purported purchaser addresses in some of those specimens did not exist, and that the products shown in the specimen were not actually listed for sale on that site.

**E.     Defendants Obtained the Futaiphy Trademark Through Fraud.**

80.     One of the trademark registration applications that Asin Enterprise filed listing Morton as attorney of record was for the Futaiphy Trademark. Asin Enterprise filed that application on March 26, 2021, on behalf of Defendant Shenzhen Luna, and Shenzhen Luna obtained a registration from the USPTO on March 1, 2022. Defendant Shenzhen Luna is the current owner of the Futaiphy Trademark. The application for the Futaiphy Trademark provided the following email addresses for Morton as the attorney of record: jmlawchina@gmail.com; mengsustone@gmail.com; zhangariel69@gmail.com. On information and belief, the first email address belonged to Morton, and the latter two email addresses belonged to employees and/or agents of Asin Enterprise.

81.     On April 1, 2021, the Futaiphy Defendants applied for a Brand Registry Account using the Futaiphy Trademark. As part of this registration process, Amazon sent a verification code to Asin Enterprise and Morton at the aforementioned three email addresses. On information and belief, Asin Enterprise and/or Morton then provided that code to the Futaiphy Defendants,

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

who used the code to complete the Brand Registry registration process. As discussed below, the Futaiphy Defendants used their Brand Registry Account to conduct fraudulent takedowns of content in the Amazon Store, resulting in harm to Amazon and its selling partners. Specifically, the Futaiphy Defendants' false reports caused the selling partners' listings to be temporarily removed from the Amazon Store, preventing the sale of such products until such time as the listings were restored by Amazon.

82.     Asin Enterprise and Morton obtained the Futaiphy Trademark through fraud.

83.     On information and belief, Asin Enterprise filed the application to register the Futaiphy Trademark using Morton's name and credentials, pursuant to its agreement with Morton to use his credentials for trademark filings. By bearing Morton's signature, the application and declaration falsely attested that such documents were prepared, reviewed, and filed by Morton, a U.S.-licensed attorney, which facts Asin Enterprise and Morton knew to be false.

84.     The declaration that Morton allowed to be signed under his credentials contained false statements. Even if Morton had actually signed his name to the Futaiphy Trademark application, he did not actually perform any review of the application, rendering the declaration false. The application to register the Futaiphy Trademark included a declaration attesting that:

    a.  Morton believed that the applicant was the owner of the Futaiphy Trademark sought to be registered;

    b.  The Futaiphy Trademark was in use in commerce, and was in use in commerce as of the filing date of the application on or in connection with the goods in the application;

    c.  The specimen filed with the application showed the Futaiphy Trademark as used on or in connection with the goods in the application and was used on or in connection with the goods in the application as of the application filing date;

d.  To the best of Morton's knowledge and belief, the facts recited in the application were accurate; and

e.  To the best of Morton's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above had evidentiary support.

85.     These statements were false. Pursuant to Morton's agreement with Asin Enterprise to allow Asin Enterprise to use Morton's credentials for trademark filings, Morton had no basis to assert any knowledge or belief regarding whether the applicant owned the mark, whether the mark was being used in commerce as of the application's filing date, or whether the specimen showed the mark as used on or in connection with the applied for goods.

86.     On information and belief, the specimen filed in connection with the application to register the Futaiphy Trademark was fabricated.[14] The specimen purported to show a ceramic dinner plate sold on Aliexpress.com through the Shop910796038 Store under the Futaiphy Trademark for $13.10. However, as shown in the specimen, the Shop910796038 Store had no customer reviews or feedback, had only one follower, its "top selling item" was a bird cage with one sale, there was no product description for the plate, the images of the plate shown for sale online did not match the physical plate shown in the specimen, and all but $1.15 of each sale was covered by a "Store Promotion" discount. Moreover, the specimen purported to show sales to buyers allegedly living in three remote villages in Alaska, but with zip codes that corresponded to California, South Carolina, and Arizona. On information and belief, all of the purported sales addresses shown in the specimen were fabricated. Had Morton diligently reviewed the specimen for the Futaiphy Trademark prior to filing the application, he would have recognized that it was fabricated.

87.     Currently, the Shop910796038 Store is active, but does not display any products for sale. On information and belief, the Shop910796038 Store meets the USPTO's criteria for a fraudulent "specimen farm" website as described above.

---

[14] The specimen filed with the Futaiphy Trademark is attached as **Exhibit B** to this Complaint.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 28

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

88.     On information and belief, the Futaiphy Defendants did not use the Futaiphy Trademark in commerce in the United States in connection with any of the goods specified in the application as of the date they filed the application to register that mark.

89.     Morton and Asin Enterprise knew their statements in the application to register the Futaiphy Trademark regarding the alleged use of the mark in commerce and the specimen allegedly showing that use were false.

90.     The false statements by Morton and Asin Enterprise in the USPTO application to register the Futaiphy Trademark were material to the USPTO's decision to accept that application for filing and eventually to issue a registration for that mark. Without those statements the USPTO would have rejected the application because use in commerce and a specimen showing that use are each required before any use-based or intent-to-use based application can mature into a registration.

91.     Furthermore, these same false statements were material to Amazon accepting the Brand Registry application that used the Futaiphy Trademark.

92.     Morton and Asin Enterprise intended for the USPTO to rely on those false statements in accepting the application to register the Futaiphy Trademark and issuing the registration for that mark. The USPTO did in fact rely on those false statements when it accepted the application and issued the registration for the Futaiphy Trademark.

93.     Morton and Asin Enterprise intended, knew, and expected that the USPTO would publish their false statements in the USPTO's public records for the Futaiphy Trademark, as they were aware that the USPTO makes trademark filings publicly available on its website and in the Federal Register.

94.     Morton and Asin Enterprise also intended, knew, and expected that members of the public at large, including Amazon specifically, would rely on the statements made in their trademark applications in the USPTO's trademark files when evaluating their client's trademark rights. Morton's and Asin Enterprise's knowledge stems from their awareness that a large portion of their customers were Amazon sellers, as well as their repeated receipt of

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

communications from Amazon with Brand Registry authorization codes each time one of their clients attempted to sign up for a Brand Registry Account by using trademark applications and/or registrations that Morton and Asin Enterprise fraudulently procured.

95.     Amazon did in fact rely on Morton's and Asin Enterprise's false statements made to procure the Futaiphy Trademark. As discussed, Amazon requires that an applicant possess a valid USPTO trademark application or registration in order to open a Brand Registry account. The Futaiphy Defendants used the Futaiphy Trademark, which was fraudulently procured by Morton and Asin Enterprise, to open the Futaiphy Brand Registry Account.

96.     Both the USPTO and Amazon were ignorant of the falsity of the statements made by Morton and Asin Enterprise in the application to register the Futaiphy Trademark.

97.     As further discussed below, Amazon was damaged by the false takedowns issued by the Futaiphy Brand Registry Account that targeted content and listings in the Amazon Store.

**F.     Defendants Obtained the Tfnyct Trademark Through Fraud.**

98.     Another of the trademark registration applications that Asin Enterprise filed listing Morton as attorney of record was for the Tfnyct Trademark. Asin Enterprise filed that application on behalf of Defendant Chen Zhong on December 11, 2020, and Chen Zong received a registration from the USPTO on September 21, 2021. Defendant Chen Zhong is the current owner of the Tfnyct Trademark. The application for the Tfnyct Trademark provided the following email addresses for Morton as the attorney of record: jmlawchina@gmail.com; mengsustone@gmail.com; zhangariel69@gmail.com. On information and belief, the first email address belonged to Morton, and the latter two email addresses belonged to employees and/or agents of Asin Enterprise.

99.     On December 22, 2020, the Tfnyct Defendants applied for a Brand Registry Account using the Tfnyct Trademark. As part of this registration process, Amazon sent a verification code to Asin Enterprise and Morton at the aforementioned three email addresses. On information and belief, Asin Enterprise and/or Morton then provided that code to the Tfnyct Defendants, who used the code to complete the Brand Registry registration process. As discussed

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 30

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

below, the Tfnyct Defendants used their Brand Registry Account to conduct fraudulent

takedowns of content in the Amazon Store, resulting in harm to Amazon and its selling partners.

Specifically, the Tfnyct Defendants' false reports caused the selling partners' listings to be

temporarily removed from the Amazon Store, preventing the sale of such products until such

time as the listings were restored by Amazon.

100.    Asin Enterprise and Morton obtained the Tfnyct Trademark through fraud.

101.    On information and belief, Asin Enterprise filed the application to register the

Tfnyct Trademark using Morton's name and credentials, pursuant to its agreement with Morton

to use his credentials for trademark filings. By bearing Morton's signature, the application and

declaration falsely attested that such documents were prepared, reviewed, and filed by Morton, a

U.S.-licensed attorney, which facts Asin Enterprise and Morton knew to be false.

102.    The declaration that Morton allowed to be signed under his credentials contained

false statements. Even if Morton actually signed his name to the Tfnyct Trademark application,

he did not actually perform any review of the application, rendering the declaration false. The

application to register the Tfnyct Trademark included a declaration attesting that:

      a.  Morton believed that the applicant was the owner of the Tfnyct Trademark
         sought to be registered;

      b.  The Tfnyct Trademark was in use in commerce, and was in use in
         commerce as of the filing date of the application on or in connection with
         the goods in the application;

      c.  The specimen filed with the application showed the Tfnyct Trademark as
         used on or in connection with the goods in the application and was used on
         or in connection with the goods in the application as of the application
         filing date;

      d.  To the best of Morton's knowledge and belief, the facts recited in the ap-
         plication were accurate; and

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 31

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

e.  To the best of the Morton's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above had evidentiary support.

103.    These statements were false. Pursuant to Morton's agreement with Asin Enterprise to allow Asin Enterprise to use his credentials for trademark filings, Morton had no basis to assert any knowledge or belief regarding whether the applicant owned the mark, whether the mark was being used in commerce as of the application's filing date, or whether the specimen showed the mark as used on or in connection with the applied for goods.

104.    On information and belief, the specimen filed in connection with the application to register the Tfnyct Trademark was fabricated.[15] The specimen purported to show a sweater plate sold on Aliexpress.com through the Shop910796038 Store under the Tfnyct Trademark for $13.10. As with the specimen for the Futaiphy Trademark, the specimen for the Tfnyct Trademark showed that the Shop910796038 Store had no customer reviews or feedback, had zero "followers," there was no product description for the sweater, and all but $1.15 of each sale (the same amount as shown in the Futaiphy Trademark specimen) was covered by a "Store Promotion" discount. Moreover, the specimen purported to show a sale to a buyer who allegedly lived in Michigan at 1990 Jonathan Circle in Shelby Township, Michigan, a house address that does not exist, as well as a sale to a buyer with a non-existent address in Miami, Florida. On information and belief, at least two of the three sales addresses shown in the specimen were fabricated. Had Morton diligently reviewed the specimen for the Tfnyct Trademark prior to filing the application, he would have recognized that it was fabricated.

105.    As discussed above, on information and belief, the Shop910796038 Store is a fraudulent "specimen farm" website.

106.    On information and belief, the Tfnyct Defendants did not use the Tfnyct Trademark in commerce in the United States in connection with any of the goods specified in the application as of the date they filed the application to register that mark.

---

[15] The specimen filed with the Tfnyct Trademark is attached as **Exhibit C** to this Complaint.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 32

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

107.    Morton and Asin Enterprise knew their statements in the application to register the Tfnyct Trademark regarding the alleged use of the mark in commerce and the specimen allegedly showing that use were false.

108.    The false statements by Morton and Asin Enterprise in the USPTO application to register the Tfnyct Trademark were material to the USPTO's decision to accept that application for filing and eventually to issue a registration for that mark. Without those statements the USPTO would have rejected the application because use in commerce and a specimen showing that use are each required before any use-based or intent-to-use based application can mature into a registration.

109.    Furthermore, these same false statements were material to Amazon accepting the Brand Registry application that used the Tfnyct Trademark.

110.    Morton and Asin Enterprise intended for the USPTO to rely on those false statements in accepting the application to register the Tfnyct Trademark and in issuing the registration for that mark. The USPTO did in fact rely on those false statements when it accepted the application and issued the registration for the Tfnyct Trademark.

111.    Morton and Asin Enterprise intended, knew, and expected that the USPTO would publish their false statements in the USPTO's public records for the Tfnyct Trademark, as they were aware that the USPTO makes trademark filings publicly available on its website and in the Federal Register. Morton and Asin Enterprise also intended, knew, and expected that members of the public at large, including Amazon specifically, would rely on the statements made in their trademark applications in the USPTO's trademark files when evaluating their client's trademark rights. Morton's and Asin Enterprise's knowledge stems from their awareness that a large portion of their customers were Amazon sellers, as well as their repeated receipt of communications from Amazon with Brand Registry Authorization codes each time one of their clients attempted to sign up for a Brand Registry Account by using trademark applications and/or registrations that Morton and Asin Enterprise fraudulently procured.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 33

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

112.    Amazon did in fact rely on Morton's and Asin Enterprise's false statements made to procure the Tfnyct Trademark. As discussed, Amazon requires that an applicant possess a valid USPTO trademark application or registration in order to open a Brand Registry account. The Tfnyct Defendants used the Tfnyct Trademark, which was fraudulently procured by Morton and Asin Enterprise, to open the Tfnyct Brand Registry Account.

113.    Both the USPTO and Amazon were ignorant of the falsity of the statements made by Morton and Asin Enterprise in the application to register the Tfnyct Trademark.

114.    As further discussed below, Amazon was damaged by the false takedowns issued by the Tfnyct Brand Registry Account that targeted content and listings in the Amazon Store.

**G.    The False Takedown Defendants' Submission of Fraudulent Takedown Requests.**

115.    The False Takedown Defendants submitted their fraudulent takedown requests through Amazon's Brand Registry "Report a Violation" Tool.

**i.    The Futaiphy Brand Registry Account's Fraudulent Takedown Requests.**

116.    On information and belief, the Futaiphy Defendants were responsible for controlling and/or operating the Futaiphy Brand Registry Account, as evidenced by their responsibility for the Futaiphy Trademark that was used to open the Futaiphy Brand Registry Account and/or other connections to the Futaiphy Brand Registry Account, as explained below. The Futaiphy Defendants first agreed to the Brand Registry Terms of Use on April 2, 2021, when they applied to open a Brand Registry Account using the Lunakj Selling Account. The Futaiphy Defendants applied to add the Futaiphy Trademark to their Brand Registry account the same day, and their application was approved on April 7, 2021. As part of the Brand Registry account creation process, Defendants Morton and Asin Enterprise, as the owners of the email addresses for correspondence in the USPTO's records at the time for the Futaiphy Trademark, received a registration code from Amazon via email. On information and belief, Morton and Asin

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 34

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Enterprise provided that code to the Futaiphy Defendants. The Futaiphy Defendants used that registration code to register the Futaiphy Brand Registry Account.

117. In 2023 and 2024, the Futaiphy Defendants used the "Report a Violation" tool in the Futaiphy Brand Registry Account to launch a broad campaign of approximately 100 takedown requests to Amazon alleging that specified product listings infringed the Futaiphy Defendants' purported copyrighted images and/or infringed the Futaiphy Trademark.

118. Each time the Futaiphy Defendants used the "Report a Violation" tool, they declared that they had a good faith belief that the content at issue violated their rights and that the use of such content was contrary to law. The Futaiphy Defendants also declared, under penalty of perjury, that the information contained in each notification using the "Report a Violation" tool was accurate, and that they were the owner, or agent of the owner, of the described rights.

119. The Futaiphy Defendants knew that the contents of their notifications were false, that they were not the owner or agent of the owner of the rights described in the submitted reports, and that the content they identified did not infringe on any copyright or trademark they owned.

120. In reliance on the Futaiphy Defendants' deceptive submissions through the "Report a Violation" tool, which included all the elements that the DMCA requires for a compliant notification of claimed infringement, Amazon expeditiously acted and removed content from product listings the Futaiphy Defendants identified in their complaints.

121. Amazon's subsequent investigation of the Futaiphy Defendants' complaints using the Futaiphy Brand Registry Account has uncovered that the Futaiphy Defendants willfully made fraudulent and invalid claims that their intellectual property rights had been infringed. For example, the investigation revealed that the Futaiphy Defendants submitted notices of infringement claiming that a specific listing violated its copyrighted text and images as shown in several other listings in the Amazon Store. However, the Futaiphy Defendants' copyright takedowns all provided the same falsified Chinese copyright registration as the basis for the takedown.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 35

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

122.     For example, on May 15, 2023, the Futaiphy Defendants used the Futaiphy Brand Registry Account to submit 18 notifications of claimed infringement through the "Report a Violation" tool. The notifications identified 18 different listings that purportedly displayed infringements of the Futaiphy Defendants' copyrighted image. Amazon's further investigation revealed that the Futaiphy Defendants' notice of infringement provided a falsified Chinese copyright registration as the basis for their takedown. The Futaiphy Defendants' notification was false, and the Futaiphy Defendants knew their statements to Amazon were false because they knew that they were not asserting a valid copyright, that the purported Chinese copyright registration document they submitted to Amazon was fabricated, and that the listing was not infringing on any rights they owned. By making the affirmations listed above in the "Report a Violation" tool, the Futaiphy Defendants intended for Amazon to rely on their statements that the content reported was infringing, and Amazon did in fact rely on those statements when it removed the content from product listings that the Futaiphy Defendants identified in their fraudulent notification.

123.     In May and August 2023, the Futaiphy Defendants used the Futaiphy Brand Registry Account to submit a number of notifications of claimed copyright infringement through the "Report a Violation" tool. Amazon's investigation revealed that each of the Futaiphy Defendants' claims of infringement was false, and followed the same type of fraudulent scheme described above.

124.     In addition to fraudulent copyright infringement claims, the Futaiphy Defendants also submitted fraudulent notices claiming that products in the Amazon Store infringed the Futaiphy Trademark.

125.     On August 19, 2023, the Futaiphy Defendants used the Futaiphy Brand Registry Account to submit a notification of claimed trademark infringement through the "Report a Violation" tool. The notification claimed that a listing for a fireproof document organizer was counterfeit, and infringed the Futaiphy Trademark. Amazon's further investigation revealed that the product listing did not infringe on the Futaiphy Trademark. The Futaiphy Defendants'

notification was false, and the Futaiphy Defendants knew their statements to Amazon were false because they were aware the product and listing did not reference or otherwise infringe the Futaiphy Trademark, and because they knew the Futaiphy Trademark was invalid. By making the affirmations of infringement in the "Report a Violation" tool, the Futaiphy Defendants intended for Amazon to rely on their statements that the reported listing was infringing, and Amazon did in fact rely on those statements when it investigated the takedown request and temporarily removed a product listing from the Amazon Store that the Futaiphy Defendants identified in their fraudulent notification.

126.    From May 2023 to March 2024, Defendants used the Futaiphy Brand Registry Account to submit three notifications of claimed trademark infringement through the "Report a Violation" tool. Amazon's investigation revealed that the Futaiphy Defendants' claims of infringement was false, and followed the same fraudulent scheme described above.

127.    Through its investigation, Amazon identified the Futaiphy Defendants as responsible for controlling and operating the Futaiphy Brand Registry Account, and for issuing fraudulent notifications through that Account. Specifically, when Defendants opened the Futaiphy Brand Registry Account, they did so by first logging into the Lunakj Selling Account, and then used the Lunakj Selling Account to create the Futaiphy Brand Registry Account. Amazon's records reflect that Defendant Shenzhen Luna registered the Lunakj Selling Account. In addition, Amazon discovered that the Futaiphy Defendants linked a financial account that Defendant Liao owned[16] to the Lunakj Selling Account, and that Defendant Liao's financial account received disbursements from the Lunakj Selling Account during the period when the Futaiphy Brand Registry Account submitted its fraudulent takedowns. Because the Lunakj Selling Account was used to open the Futaiphy Brand Registry Account, and because Defendants Shenzhen Luna and Liao are directly linked to the Lunakj Selling Account, it is reasonable to infer that Defendants Shenzhen Luna and Liao were responsible for operating the Futaiphy

_____

[16] Defendant Liao registered this financial account using his name and the name of a Hong Kong company that he owns and controls: Sunlit Craft Co., Ltd.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 37

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Brand Registry Account as well. In addition, the Lunakj Selling Account was actively selling products in the Amazon Store during the Futaiphy Defendants' campaign of submitting fraudulent takedown notices, and several of the products that the Lunakj Selling Account sold were the same products sold by others' listings that the Futaiphy Defendants targeted with their fraudulent takedown notices. On information and belief, the Futaiphy Defendants' takedown campaign was motivated in part by an attempt to unfairly divert sales from the targeted listings to the competing product listings offered by the Lunakj Selling Account.

128. After Amazon learned that the Futaiphy Defendants had abused the notice-and-takedown process, Amazon blocked the Futaiphy Brand Registry Account. In doing so, Amazon protected its selling partners, customers, and Amazon's reputation. Amazon also restored product listings that had been taken down in the Amazon Store in reliance on the Futaiphy Defendants' deceptions. Amazon blocked the Lunakj Selling Account as well.

        **ii.**        **The Tfnyct Brand Registry Account's Fraudulent Takedown Requests.**

129. On information and belief, the Tfnyct Defendants were all responsible for controlling and/or operating the Tfnyct Brand Registry Account, as evidenced by their responsibility for the Tfnyct Trademark that was used to open the Tfnyct Brand Registry Account and/or other connections to the Tfnyct Brand Registry Account, as explained below. The Tfnyct Defendants first agreed to the Brand Registry Terms of Use on December 22, 2020, when they applied to open a Brand Registry Account using the BDliccs Selling Account. The Tfnyct Defendants applied to add the Tfnyct Trademark to their Brand Registry account the same day, and their application was approved on December 23, 2020. As part of the Brand Registry account creation process, Defendants Morton and Asin Enterprise, as the owners of the email addresses for correspondence in the USPTO's records at the time for the Tfnyct Trademark, received a registration code from Amazon via email. On information and belief, Morton and Asin Enterprise provided that code to the Tfnyct Defendants. The Tfnyct Defendants used that registration code to register the Tfnyct Brand Registry Account.

130.    In May and June 2023, the Tfnyct Defendants used the "Report a Violation" tool in the Tfnyct Brand Registry Account to launch a broad campaign of approximately 80 takedown requests to Amazon alleging that specified product listings infringed the Tfnyct Trademark. Amazon's investigation revealed that each of the Tfnyct Defendants' claims of infringement was false, and followed the same type of fraudulent scheme described below.

131.    Each time the Tfnyct Defendants used the "Report a Violation" tool, they declared that they had a good faith belief that the content at issue violated their rights and that use of such content was contrary to law. The Tfnyct Defendants also declared, under penalty of perjury, that the information contained in each notification using the "Report a Violation" tool was accurate, and that they were the owner, or agent of the owner, of the described rights.

132.    The Tfnyct Defendants knew that the contents of their notifications were false, that they were not the owner or agent of the owner of the rights described in the submitted reports, and that the content they identified was not infringing on any trademark they owned.

133.    In reliance on the Tfnyct Defendants' deceptive submissions through the "Report a Violation" tool, Amazon expeditiously acted and removed content from product listings the Tfnyct Defendants identified in their complaints.

134.    Amazon's subsequent investigation of the Tfnyct Defendants' complaints using the Tfnyct Brand Registry Account has uncovered that the Tfnyct Defendants willfully made fraudulent and invalid claims that their intellectual property rights had been infringed. For example, the investigation revealed that the Tfnyct Defendants submitted notices of infringement claiming that specified listings violated the Tfnyct Trademark. However, Amazon's investigation revealed that such listings did not include the Tfnyct Trademark. Instead, shortly before submitting their fraudulent notice of infringement, Defendants manipulated and altered product descriptions by adding the Tfnyct Trademark to product listing pages in an effort to create the false appearance of infringement.

135.    For example, on May 24, 2023, the Tfnyct Defendants used the Tfnyct Brand Registry Account to submit a notification of claimed trademark infringement through the

"Report a Violation" tool. The notification claimed that a listing for a fanny pack was counterfeit, and infringed the Tfnyct Trademark. Amazon's further investigation revealed that the listing did not infringe or reference the Tfnyct Trademark. On or about the date Defendants submitted the notice of infringement, they altered the product listing for this fanny pack to include the Tfnyct Trademark. The Tfnyct Defendants' notification was false, and the Tfnyct Defendants knew their statements to Amazon were false because they were aware the product and original listing did not reference or otherwise infringe the Tfnyct Trademark, and because they knew the Tfnyct Trademark was invalid. Moreover, they deceptively manipulated the listing page to create the false appearance of infringement. By making the affirmations listed above in the "Report a Violation" tool, the Tfnyct Defendants intended for Amazon to rely on their statements that the content reported was infringing, and Amazon did in fact rely on those statements when it temporarily removed the product listing that the Tfnyct Defendants identified in their fraudulent notification.

136.    Through its investigation, Amazon identified the Tfnyct Defendants as responsible for controlling and operating the Tfnyct Brand Registry Account, and for issuing fraudulent notifications through that Account. Specifically, when Defendants opened the Tfnyct Brand Registry Account, they did so by first logging into the BDliccs Selling Account, and then used the BDliccs Selling Account to create the Tfnyct Brand Registry Account. Amazon's records reflect that Defendant Chen Zhong registered the BDliccs Selling Account through a Chinese company he controls. In addition, Amazon discovered that the Tfnyct Defendants linked a financial account that Defendant Guo Zhong owned to the BDliccs Selling Account, and that Guo Zhong's financial account received disbursements from the BDliccs Selling Account during the period when the Tfnyct Brand Registry Account submitted its fraudulent takedowns. Because the BDliccs Selling Account was used to open the Tfnyct Brand Registry Account, and because Defendants Chen Zhong and Guo Zhong are directly linked to the BDliccs Selling Account, it is reasonable to infer that Chen Zhong and Guo Zhong were responsible for operating the Tfnyct Brand Registry Account as well. In addition, Guo Zhong also owned a financial account linked

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 40

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

to a second Amazon selling account, the Anck Selling Account, that actively sold products in the Amazon Store during the Tfnyct Defendants' campaign of submitting fraudulent takedown notices. Several of the products the Anck Selling Account sold were the same products sold by other listings that the Tfnyct Defendants targeted with their fraudulent takedown notices. On information and belief, the Tfnyct Defendants' takedown campaign was motivated in part by an attempt to unfairly divert sales from the targeted listings to the competing product listings offered by the Anck Selling Account.

137.    After Amazon learned that the Tfnyct Defendants had abused the notice-and-takedown process by deceiving Amazon, Amazon blocked the Tfnyct Brand Registry Account. In doing so, Amazon protected its selling partners, customers, and Amazon's reputation. Amazon also restored product listings that had been taken down in the Amazon Store in reliance on the Tfnyct Defendants' deceptions. Amazon also blocked the BDliccs Selling Account and Anck Selling Account.

## V.    CLAIMS

### FIRST CLAIM
### *(Against the Futaiphy Defendants)*
### Misrepresentation of Copyright Infringement Under 17 U.S.C. § 512(f)

138.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

139.    Section 512(f) of the Copyright Act provides that "[a]ny person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages, including costs and attorneys' fees, incurred . . . by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f).

140.    The Futaiphy Defendants submitted false DMCA takedown requests to Amazon through Amazon's "Report a Violation" tool, improperly seeking removal of materials from product listings in the Amazon Store. The Futaiphy Defendants' notifications to Amazon falsely

represented that the content or images appearing in product listings in the Amazon Store infringed on the Futaiphy Defendants' purported copyrights.

141.    The Futaiphy Defendants knew these representations were false. At the time they submitted the fraudulent takedown notices to Amazon, the Futaiphy Defendants could not have reasonably believed that they held any copyright or other intellectual property interest in the works asserted. Yet the Futaiphy Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them, consistent with the notice-and-takedown procedures set forth in the DMCA and Amazon's policies.

142.    In reliance on the misrepresentations in the Futaiphy Defendants' takedown requests, and to act expeditiously to protect what it believed at the time to be legitimate rights, Amazon removed full listings, or content from listings in the Amazon Store.

143.    By submitting takedown notifications in violation of 17 U.S.C. § 512(f), the Futaiphy Defendants willfully, knowingly, and materially misrepresented, that product listings were infringing on their intellectual property under copyright law.

144.    As a result of the Futaiphy Defendants' false takedown requests, Amazon suffered economic harm and expended significant resources to investigate and address the Futaiphy Defendants' wrongdoing. Accordingly, Amazon seeks its attorneys' fees and damages, under 17 U.S.C. §512(f), in an amount to be determined at trial.

**SECOND CLAIM**
*(Against the False Takedown Defendants)*
**Breach Of Contract**

145.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

146.    By enrolling in Brand Registry and submitting takedown notifications through the "Report a Violation" tool, the False Takedown Defendants entered into valid and enforceable agreements with Amazon.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 42

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

147.     When the False Takedown Defendants applied to Brand Registry, they agreed to provide accurate and truthful information to Amazon in exchange for the benefit of access and use of the Brand Registry services and tools.

148.     The Futaiphy Defendants used the Futaiphy Trademark to create the Futaiphy Brand Registry Account. In doing so, the Futaiphy Defendants represented that the Futaiphy Trademark was valid and that they had rights to that mark, which representations were neither true nor accurate.

149.     The Tfnyct Defendants used the Tfnyct Trademark to create the Tfnyct Brand Registry account. In doing so, the Tfnyct Defendants represented that the Tfnyct Trademark was valid and that they had rights to that mark, which representations were neither true nor accurate.

150.     The "Report a Violation" tool's mandatory consent form is a valid and enforceable contract that imposed a duty on all users submitting a takedown notice using the tool: (1) to represent a good faith basis for the notice; and (2) to declare under penalty of perjury that the information provided is correct and accurate, and that the user is the owner or agent of the rights described therein.

151.     Each time the False Takedown Defendants submitted takedown notifications to Amazon through the "Report a Violation" tool, the False Takedown Defendants represented that they had "a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner"; and the False Takedown Defendants also had to declare, under penalty of perjury, "that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

152.     Amazon performed all of its contractual obligations.

153.     The False Takedown Defendants breached their contractual obligations to Amazon under the Brand Registry Terms of Use and the terms for using Brand Registry's "Report a Violation" tool by claiming ownership of a fraudulently-obtained trademark to gain access to Brand Registry, by submitting takedown notifications regarding alleged infringement of their respective trademarks using Brand Registry's "Report a Violation" tool without a good

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 43

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

faith basis, by knowingly submitting false information using the "Report a Violation" tool, and by falsely declaring under penalty of perjury that the content complained of violated their trademark rights.

154.    As a result of the False Takedown Defendants' breach of their contracts with Amazon, Amazon suffered economic harm in an amount to be determined at trial.

### THIRD CLAIM
*(Against the False Takedown Defendants)*
**Tortious Interference with Contractual Relationship**

155.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

156.    Amazon and third-party sellers who sell products in the Amazon Store have valid contractual relationships under the Amazon Services Business Solutions Agreement, available at https://sellercentral.amazon.com/help/hub/reference/external/G1791?locale=en-US.

157.    On information and belief, the False Takedown Defendants had knowledge of the valid contractual relationships between Amazon and each seller of goods in the Amazon Store.

158.    The False Takedown Defendants knowingly and intentionally submitted to Amazon false takedown notices regarding alleged infringement of their respective trademarks for an improper purpose, which interfered with Amazon's legitimate business relationships with its selling partners.

159.    The False Takedown Defendants' submission of the false trademark takedown notices caused Amazon to investigate the False Takedown Defendants' claims and remove certain listings of sellers in the Amazon Store. Those actions interfered with the business relationship and expectancy between Amazon and third-party sellers using those product listings, and made performance of the contract more expensive and burdensome.

160.    As a result of the False Takedown Defendants' intentional interference with Amazon's legitimate business interests, Amazon suffered economic harm in an amount to be determined at trial.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 44

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

**FOURTH CLAIM**
*(Against the False Takedown Defendants)*
**Violation of Washington Consumer Protection Act, RCW 19.86.010, et seq.**

161.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

162.    The False Takedown Defendants' filing of false and fraudulent trademark takedown notifications constitutes unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

163.    The False Takedown Defendants' filing of false and fraudulent trademark takedown notifications harms the public interest by using false claims of infringement to undermine legitimate sales by Amazon's selling partners in the Amazon Store.

164.    The False Takedown Defendants' false and fraudulent trademark takedown notifications directly and proximately cause harm to and tarnish Amazon's reputation and goodwill with consumers, and damages its business and property interests and rights.

165.    Accordingly, Amazon seeks to enjoin further violations of RCW 19.86.020 and recover from the False Takedown Defendants their attorneys' fees, costs, and actual damages, trebled.

**FIFTH CLAIM**
*(Against the False Takedown Defendants)*
**Fraud (Fraudulent Brand Registry Takedown Notices)**

166.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

167.    The False Takedown Defendants knowingly misrepresented material facts regarding their rights to their respective trademarks in order to induce Amazon to permit the False Takedown Defendants to open and operate their Brand Registry accounts.

168.    The Futaiphy Defendants knew that they had obtained the Futaiphy Trademark through fraud, that the mark was invalid, and that they did not have any rights to the mark. Nonetheless, by using the Futaiphy Trademark to access Brand Registry, Defendants represented to Amazon that they owned the mark and that it was valid.

169.     The Tfnyct Defendants similarly knew that they had obtained the Tfnyct Trademark through fraud, that the mark was invalid, and that they did not have any rights to the mark. Nonetheless, by using the Tfnyct Trademark to access Brand Registry, Defendants represented to Amazon that they owned the mark and that it was valid.

170.     Amazon relied on the False Takedown Defendants' representations regarding the validity and their ownership of their respective trademarks, as shown in the USPTO's public records regarding the marks.

171.     The False Takedown Defendants also knowingly misrepresented information regarding existing material facts about the alleged infringement of their respective trademarks by product listings in the Amazon Store, in order to induce Amazon to grant their takedown requests and remove targeted product listings in the Amazon Store.

172.     The False Takedown Defendants knew that their representations were false at the time they submitted the fraudulent trademark takedown notifications using the "Report a Violation" tool through Brand Registry.

173.     Specifically, the False Takedown Defendants alleged that the listings violated their alleged trademark rights when they knew such statements to be false. Amazon did not know of the falsity of the misrepresentations, and reasonably relied on The False Takedown Defendants' false representations to its detriment.

174.     Amazon had a right to rely on the False Takedown Defendants' representations in the submission of the trademark takedown notifications, especially given the "Report a Violation" tool's consent form requiring such representations to be true under penalty of perjury. At the time they submitted the fraudulent trademark takedown notifications to Amazon, the False Takedown Defendants could not have reasonably believed that they held any intellectual property interest in the listings they flagged as infringing. Yet the False Takedown Defendants still raised these false claims with the intent to induce Amazon's reliance and to have Amazon act upon them.

175.    As a result of its reliance on the False Takedown Defendants' intentional misrepresentations, Amazon suffered economic harm in an amount to be proven at trial.

## SIXTH CLAIM
### *(Against Defendants Asin Enterprise and Morton)*
### Fraud (Fraudulent Trademark Filings)

176.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

177.    Asin Enterprise and Morton knowingly made false statements to the USPTO in connection with their applications to register the Futaiphy Trademark, the Tfnyct Trademark, and at least 221 other trademark applications that bad actors used to create Brand Registry Accounts and issue false takedowns in the Amazon Store.

178.    Specifically, Asin Enterprise submitted trademark applications, including for the Futaiphy Trademark and the Tfnyct Trademark, that falsely bore Morton's name, credentials, and signature, even though Morton had little to no involvement with preparing or reviewing the applications. The applications falsely alleged that the marks were being used in commerce on or in connection with the applied for goods, when in fact they were not. The applications also contained fabricated specimens, which falsely purported or show use of marks on products in commerce.

179.    Morton knowingly participated in, encouraged, and benefited from Asin Enterprise's misleading use of his USPTO account, name, and credentials in connection with filing fraudulent trademark applications that Morton had little or no involvement with, including the applications to register the Futaiphy Trademark and the Tfnyct Trademark.

180.    Even in the rare instances where Morton actually filed trademark applications under his name, those applications contained false statements in the declarations he signed. Morton relied on Asin Enterprise to prepare each of the trademark applications and communicate with the applicants. Thus, even where Morton actually signed the applications, he performed no diligence or inquiry as to the facts he attested to in the declarations included in each application, had no contact with the actual applicants, and had no other basis for his attestations. In such

cases, Morton signed declarations falsely attesting to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the statements in the application and declaration were true, including specifically that the applied for marks were being used in commerce and that the specimens showed this alleged use in commerce.

181.    Asin Enterprise and Morton knew that their statements in these trademark applications, including the applications to register the Futaiphy Trademark and the Tfnyct Trademark, were false.

182.    Asin Enterprise's and Morton's false statements in the trademark applications they filed, including the applications to register the Futaiphy Trademark and the Tfnyct Trademark, were material (1) to the USPTO's decision to accept the applications and to issue registrations for some of those marks, including the Futaiphy Trademark and the Tfnyct Trademark; and (2) to Amazon's acceptance of the Brand Registry account registrations that used such marks, including the Futaiphy Trademark and the Tfnyct Trademark.

183.    Morton and Asin Enterprise intended the USPTO to rely on their false statements, and the USPTO did in fact rely on those false statements in accepting the applications and in issuing the registrations for the Futaiphy Trademarks and the Tfnyct Trademarks. The USPTO would not have issued the registrations without Morton's and Asin Enterprise's false statements, as use in commerce and a specimen showing that use are each required before any use-based or intent-to-use based application can mature into a registration.

184.    Morton and Asin Enterprise intended, knew, and expected that the USPTO would publish their false statements in the USPTO's public records to parties such as Amazon who rely on the accuracy and truthfulness of such trademark filings. Furthermore, Morton and Asin Enterprise knew, intended, and expected that Amazon would rely on their trademark filings when their bad-actor clients used the trademark applications and/or registrations to improperly gain access to Brand Registry, which was a primary and intended purpose of Asin Enterprise and Morton's fraudulent trademark scheme. Amazon did in fact rely on Morton's and Asin Enterprise's false statements in their trademark filings, including without limitation the

applications for the Futaiphy Trademark and the Tfnyct Trademark, in approving the Brand Registry registrations that used such trademarks.

185.    Both the USPTO and Amazon were ignorant of the falsity of the statements made by Morton and Asin Enterprise in their trademark filings.

186.    Amazon was damaged in an amount to be proven at trial by the improper creation of the Futaiphy Brand Registry Account and the Tfnyct Brand Registry Account, and by the false trademark takedowns that were submitted by the Futaiphy Brand Registry Account and Tfnyct Brand Registry Account based on the Futaiphy Trademark and Tfnyct Trademark, respectively. Amazon was further damaged by the other 221 trademark applications that Morton and Asin Enterprise filed, which were also used to improperly access Brand Registry and/or to make false and abusive notices of trademark infringement through the Brand Registry program.

### SEVENTH CLAIM
*(Against Defendants Shenzhen Luna and Chen Zhong)*[17]
**Cancellation of the Futaiphy and Tfnyct Trademarks for Fraud, and As Void *Ab Initio* for Lack of Use as of Filing Date, 15 U.S.C. § 1119, § 1064**

187.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

188.    The Futaiphy Defendants used the Futaiphy Trademark to gain access to Brand Registry and to submit fraudulent notices of infringement to Amazon. The Tfnyct Defendants used the Tfnyct Trademark to gain access to Brand Registry and to submit fraudulent notices of infringement to Amazon. Amazon has a real interest in seeking cancellation of the Futaiphy Trademark and the Tfnyct Trademark.

189.    Defendant Shenzhen Luna is the current owner of the Futaiphy Trademark.

190.    Defendant Chen Zhong is the current owner of the Tfnyct Trademark.

191.    On March 26, 2021, Defendant Asin Enterprise filed the application to register the Futaiphy Trademark on behalf of Defendant Shenzhen Luna, claiming that the mark was in use

---

[17] Amazon is asserting this Claim against Defendant Luna with respect to cancellation of the Futaiphy Trademark, and against Defendant Chen Zhong with respect to cancellation of the Tfnyct Trademark.

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 49

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. §1051(a), in connection with the goods listed in the application, and submitted a specimen purporting to show such use.

192.    On December 11, 2020, Defendant Asin Enterprise filed the application to register the Tfnyct Trademark on behalf of Defendant Chen Zhong, claiming that the mark was in use in commerce under Section 1(a) of the Lanham Act, 15 U.S.C. §1051(a), in connection with the goods listed in the application, and submitted a specimen purporting to show such use

193.    The applications to register the Futaiphy and Tfnyct Trademarks were filed and signed under the name of Defendant Morton as attorney of record. Defendant Morton's signature appeared on each of the declarations as part of those applications attesting that: (1) "The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;" and (2) "the specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date."

194.    The applications to register the Futaiphy and Tfnyct Trademarks contained false statements. On information and belief, the applications were not prepared and filed by Defendant Morton, but were instead filed and prepared by an employee or agent of Asin Enterprise using Morton's name and credentials. The statements that the Futaiphy and Tfnyct Trademarks were in use in commerce as of the filing date of the applications and that the specimens showed such uses were also false, as the specimens were fabricated by Defendants Shenzhen Luna, Chen Zong, and/or Asin Enterprise.

195.    Even if Morton filed the Futaiphy and Tfnyct Trademark applications, he relied on Asin Enterprise to prepare and review the content of the trademark applications and to communicate with the applicants, Defendants Shenzhen Luna and Chen Zhong. Morton performed no diligence or inquiry as to the facts he attested to in the declarations in the applications to register the Futaiphy and Tfnyct Trademarks, and he had no contact with the applicants. Nonetheless, Morton signed declarations in the Futaiphy and Tfnyct Trademark applications falsely attesting to the best of his knowledge, information, and belief, formed after

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 50

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

an inquiry reasonable under the circumstances, that the statements in the applications and declarations were true, namely, that the Futaiphy and Tfnyct Trademarks were in use in commerce and that the specimens showed this alleged use in commerce.

196.    On information and belief, Defendants Shenzhen Luna, Chen Zhong, Asin Enterprise, and Morton knew these statements were false, as they were aware that Morton had not prepared the applications, and that the specimens were fabricated because Defendants Asin Enterprise, Shenzhen Luna, and/or Chen Zhong had created them for purpose of the filings.

197.    Defendants Shenzhen Luna, Chen Zhong, Asin Enterprise, and Morton made these false representations to deceive the USPTO into accepting the applications and issuing the registrations for the Futaiphy and Tfnyct Trademarks.

198.    But for these false statements, the USPTO would not have issued the registrations for the Futaiphy and Tfnyct Trademarks, because use in commerce and a specimen showing such use are each required before any use-based or intent-to-use application can mature into a registration. In reliance on these false statements, the USPTO issued the registration for the Futaiphy Trademark on March 1, 2022, and for the Tfnyct Trademark on September 21, 2021.

199.    Amazon has been harmed and will continue to be harmed by the Futaiphy and Tfnyct Trademark registrations because Defendants Shenzhen Luna and Chen Zhong used them to improperly gain entry to Brand Registry and to issue false takedowns in Brand Registry, and the Futaiphy and Tfnyct Trademark registrations could be used again in the future to assert false takedowns in the Amazon Store if the registrations are not cancelled.

200.    Based on the foregoing, Defendant Shenzhen Luna obtained the Futaiphy Trademark registration through fraud, and Defendant Chen Zhong obtained the Tfnyct Trademark registration through fraud, which is grounds for cancellation of the registrations in their entirety.

201.    As a separate and additional basis for cancellation, because Defendant Shenzhen Luna was not using the Futaiphy Trademark in connection with any of the goods identified in the Futaiphy Trademark application as of the date that application was filed, and because Defendant

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 51

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Chen Zhong was not using the Tfnyct Trademark in connection with any of the goods identified in the Tfnyct Trademark application as of the date that application was filed, the Futaiphy and Tfnyct Trademark registrations are also both void *ab initio*.

## EIGHTH CLAIM
*(Against Defendants Shenzhen Luna, Chen Zhong, Asin Enterprise, and Morton)*
**Civil Liability for False or Fraudulent Registration
of the Futaiphy and Tfnyct Trademarks, 15 U.S.C. § 1120[18]**

202.    Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

203.    Defendants Shenzhen Luna, Chen Zhong, Asin Enterprise, and Morton procured the Futaiphy and Tfnyct Trademark registrations from the USPTO through knowingly false and/or fraudulent declarations and representations. The Futaiphy and Tfnyct Trademark applications were purported to have been signed by Morton as a U.S.-licensed attorney when, on information and belief, Morton was not actually involved in preparing, reviewing, or signing the trademark applications; the applications each contained a fabricated specimen of use that falsely purported to show use of the Futaiphy mark or Tfnyct mark in commerce when there was no such use; and the applications contained a declaration that falsely alleged that the Futaiphy and Tfnyct marks were in use in commerce.

204.    The USPTO issued the registrations for the Futaiphy and Tfnyct Trademarks in reliance on Defendants Shenzhen Luna's, Chen Zhong's, Asin Enterprise's, and Morton's false statements and representations regarding the alleged use in commerce of the applied-for marks and the fabricated specimens purportedly showing that alleged use, and these Defendants intended for the USPTO to rely on these false statements and representations. Had the USPTO been aware of the falsity of these statements and representations, it would not have issued registrations for either the Futaiphy Trademark or the Tfnyct Trademark.

---

[18] Amazon is asserting this Claim against Defendant Shenzhen Luna with respect to the Futaiphy Trademark, and against Defendant Chen Zhong with respect to the Tfnyct Trademark.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

205.    To gain access to Brand Registry, Amazon requires that a brand have either registered a trademark or applied for a trademark with an eligible government trademark office, including without limitation the USPTO. Defendant Shenzhen Luna obtained a registration for the Futaiphy Trademark on March 1, 2022. The Futaiphy Defendants used the Futaiphy Trademark registration to open the Futaiphy Brand Registry Account on April 2, 2021. Defendant Chen Zhong obtained a registration for the Tfnyct Trademark on September 21, 2022. The Tfnyct Defendants used the Tfnyct Trademark registration to open the Tfnyct Brand Registry Account on December 22, 2022. Had Amazon been aware that Defendants made false statements to the USPTO in support of their respective trademark applications in order to gain access to Brand Registry, Amazon would not have granted Brand Registry access to them.

206.    Amazon was damaged by Defendant Defendants Shenzhen Luna's, Chen Zhong's, Asin Enterprise's, and Morton's false and fraudulent procurement of the Futaiphy and Tfnyct Trademarks because (1) the False Takedown Defendants used the Futaiphy and Tfnyct Trademarks to open the Futaiphy and Tfnyct Brand Registry Accounts and improperly gain access to Brand Registry; and (2) the False Takedown Defendants used the Futaiphy and Tfnyct Trademarks to issue fraudulent trademark takedown notices in the Amazon Store.

207.    Defendants Shenzhen Luna, Chen Zhong, Asin Enterprise, and Morton are liable to Amazon for all damages and injury that Amazon has suffered as a result of the fraudulent procurement of the Futaiphy Trademark and the Tfnyct Trademark.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A.    That the Court issue an order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them from:

(i)    Submitting to Amazon any takedown notifications based on false assertions of rights of copyright ownership by any means or otherwise

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 53

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

violating 17 U.S.C. § 512(f), whether as written submissions, through the "Report Infringement" form, or using the "Report a Violation" tool;

(ii)    enrolling or attempting to enroll in Amazon's Brand Registry program;

(iii)   filing fraudulent trademark applications or other fraudulent declarations and statements with the USPTO in connection with trademark applications or registrations in order to gain access to Brand Registry or to issue false trademark takedown notices for content in Amazon's stores;

(iv)   issuing fraudulent trademark takedown notices using Brand Registry; and

(v)    assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (iv) above;

B.    That the Court enter judgment in Amazon's favor on all claims;

C.    That the Court enter an order requiring Defendants to pay all general, special, and actual damages that Amazon has sustained or will sustain as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by RCW 19.86.020;

D.    That the Court enter an order requiring Defendants to pay the maximum amount of prejudgment interest authorized by law;

E.    That the Court enter an order requiring Defendants to pay the costs of this action and Amazon's reasonable attorneys' fees and other costs incurred in prosecuting this action, as provided for by 17 U.S.C. § 512(f), RCW 19.86.020, or otherwise allowed by law;

F.    That the Court enter an order requiring identified financial institutions restrain and transfer to Amazon all amounts arising from Defendants' unlawful activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case;

G.    That the Court enter an order requiring Defendant Asin Enterprise to disable, transfer to Amazon, and cease hosting the asintm.com domain and any other domains and websites through which Asin Enterprise engages in the aforementioned enjoined activities;

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 54

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

H.      That the Court enter an Order authorizing Amazon to give notice of the injunction to the domain registrars, domain hosts, and domain registries for asintm.com and any other domains and websites through which Defendant Asin Enterprise engages in the aforementioned enjoined activities, and to require those registrars, hosts, and registries (1) to transfer to Amazon control and ownership of the asintm.com domain and any other domains and websites through which Asin Enterprise engages in the aforementioned enjoined activities, and (2) to cease providing services to Asin Enterprise involving hosting, facilitating access to, or providing any supporting services to asintm.com and any other domains and websites through which Asin Enterprise engages in the aforementioned enjoined activities;

I.      That the Court enter an order under 15 U.S.C. § 1119 cancelling the registration for the Futaiphy Trademark and Tfnyct Trademark in their entirety; and

J.      That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.


DATED this 16th day of September, 2024.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiffs*


s/ Scott Commerson
Scott Commerson, WSBA #58085
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

COMPLAINT FOR CANCELLATION OF FEDERAL TRADEMARK
REGISTRATIONS, DAMAGES, AND EQUITABLE RELIEF - 55

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax