The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation and AMAZON.COM SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN G. MORTON, an individual; ASIN ENTERPRISE MANAGEMENT CONSULTING LTD. CO., a China corporation; SHENZHEN LUNA TECHNOLOGY CO., LTD., a China corporation; HUANHUAN LIAO, an individual; CHENLIANG ZHONG, an individual; GUOLIANG ZHONG, an individual; and DOES 1-10,<br><br>Defendants. | No. 2:24-cv-01471-JLR<br><br>**AMAZON'S OPPOSITION TO DEFENDANT JONATHAN G. MORTON'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR: FEBRUARY 3, 2026 |

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 1
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 7

II.   FACTUAL BACKGROUND .............................................................................. 8

     A.    Morton Partners with Asin in Fraudulent Trademark Scheme. ............................ 8

     B.    Morton Facilitates Clients' Opening of Brand Registry Accounts Using Fake
           Trademarks. ............................................................................................................ 8

     C.    The USPTO Sanctions Morton. ............................................................................. 9

     D.    The Fraudulent Futaiphy and Tfnyct Trademarks. ............................................. 10

     E.    Morton's Misconduct Harmed Amazon. .............................................................. 11

III.  PROCEDURAL BACKGROUND ................................................................... 11

     A.    Filing of Complaint and Service on Other Defendants. ...................................... 11

     B.    Attempted Hague Service on Morton. .................................................................. 11

     C.    The Court Grants Alternative Service on Morton. .............................................. 12

IV.   ARGUMENT ...................................................................................................... 12

     A.    The Court Should Deny the 12(b)(5) Motion. .................................................... 12

     B.    The Court Should Deny the 12(b)(2) Motion. .................................................... 13

           1.    The Court Has Specific Jurisdiction Over Morton. ................................. 13

           2.    Alternatively, the Court Has Jurisdiction Over Morton Pursuant to Rule
                 4(k)(2). ..................................................................................................... 16

     C.    The Court Should Deny the 12(b)(6) Motion. .................................................... 18

           1.    15 U.S.C. § 1120 Claim for False or Fraudulent Trademark Registration.
                 .................................................................................................................. 18

           2.    Consumer Protection Act Claim. ............................................................. 22

           3.    Common Law Fraud Claim. ..................................................................... 24

V.    CONCLUSION ................................................................................................... 27

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 2
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Federal Cases**

4

5

*Acad. Award Prods., Inc. v. Bulova Watch Co.*,
   233 F.2d 449 (2d Cir. 1956) ...................................................................................21

6

*App Dynamic ehf v. Vignisson*,
   87 F. Supp. 3d 322 (D.D.C. 2015)..........................................................................17

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................18

9

10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) ................................................................................14

11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ................................................................................15

12

13

*Bay State Sav. Bank v. Baystate Fin. Servs., LLC*,
   484 F. Supp. 2d 205 (D. Mass. 2007)................................................................18, 19

14

15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................18

16

*Burnell v. Lewis Brisbois Bisgaard & Smith LLP*,
   2022 WL 2668247 (W.D. Wash. July 11, 2022) ....................................................12

17

18

*Bushbeck v. Chi. Title Ins. Co.*,
   632 F. Supp. 2d 1036 (W.D. Wash. 2008) .............................................................22

19

20

*Corker v. Costco Wholesale Corp.*,
   585 F.Supp.3d 1284 (W.D. Wash. 2022) ...............................................................14

21

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ................................................................................10

22

23

*DeMert & Dougherty, Inc. v. Chesebrough-Pond's, Inc.*,
   348 F. Supp. 1194 (N.D. Ill. 1972).........................................................................21

24

25

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) .........................................................13, 14, 15, 17

26

*Eastboro Found. Charitable Tr. v. Penzer*,
   950 F. Supp. 2d 648 (S.D.N.Y. 2013) ....................................................................17

27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Encinas v. Univ. of Wash.*,
  2022 WL 4598083 (W.D. Wash. Sept. 20, 2022)..................................................................19

*Griggs v. Am. Int'l Grp., Inc.*,
  2014 WL 2573300 (W.D. Wash. June 9, 2014) ...................................................................18

*Hawes v. Kabani & Co., Inc.*,
  182 F. Supp. 3d 1134 (W.D. Wash. 2016) ..........................................................................13

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) ..............................................................................................17

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................................23

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..............................................................................................15

*Lang Van, Inc. v. VNG Corp.*,
  40 F.4th 1034 (9th Cir. 2022) .............................................................................................16

*Levine v. Safeguard Health Enters., Inc.*,
  32 F. App'x 276 (9th Cir. 2002)..........................................................................................26

*Maring v. PG Alaska Crab Inv. Co., LLC*,
  2006 WL 328400 (W.D. Wash. Feb. 10, 2006)...................................................................24

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................................................13

*McGuire v. Dendreon Corp.*,
  2008 WL 5130042 (W.D. Wash. Dec. 5, 2008) ..................................................................20

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ..............................................................................................25

*Nixon v. Franciscan Health Sys.*,
  2011 WL 1772587 (W.D. Wash. May 10, 2011) .................................................................20

*Pino v. Cardone Cap., LLC*,
  139 F.4th 1102 (9th Cir. 2025) ...........................................................................................24

*Preferred Nutrition, Inc. v. Vanderhaeghe*,
  2010 WL 11565193 (W.D. Wash. Nov. 22, 2010)...............................................................16

*Quan Nguyen v. Diamond Resorts Int'l Mktg., Inc.*,
  2019 WL 316709 (W.D. Wash. Jan. 24, 2019) ...................................................................23

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Read v. Moe*,
  899 F. Supp. 2d 1024 (W.D. Wash. 2012) ................................................................................16

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .......................................................................................12, 13

*Shields v. Fred Meyer Stores Inc.*,
  741 F. Supp. 3d 915 (W.D. Wash. 2024) .................................................................................22

*Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am.*,
  158 F. Supp. 277 (D.N.J. 1958)..............................................................................................21

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
  205 F.3d 1219 (10th Cir. 2000) ...............................................................................18, 19, 20

*United States v. Camp*,
  723 F.2d 741 (9th Cir. 1984) ..................................................................................................15

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ..................................................................................................10

*World Ass'n of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*,
  F. Supp. 3d, 2025 WL 2591413 (W.D. Wash. May 23, 2025)................................................16

**State Cases**

*FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*,
  175 Wn. App. 840 (2013), *aff'd*, 180 Wn.2d 954 (2014), *aff'd*, 190 Wn.2d 281 (2018)........26

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986)..............................................................................................................22

*Martin v. Miller*,
  24 Wn. App. 306 (1979).....................................................................................................24, 26

*Matter of Est. of Lint*,
  135 Wn. 2d 518 (1998)............................................................................................................24

*Nw. S.S. Co. v. Dexter Horton & Co.*,
  29 Wash. 565 (1902)................................................................................................................25

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wn.2d 27 (2009), *as amended*, 796 F. Supp. 3d 740 (W.D. Wash. 2025).......................22

**Federal Statutes**

15 U.S.C. § 1072..............................................................................................................................25

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

15 U.S.C. § 1120..........................................................................................................*passim*

**State Statutes**

RCW 19.86.093 ...........................................................................................................22

**Rules**

Fed. R. Civ. P. 4..........................................................................................................12

Fed. R. Civ. P. 4(f)(3) ................................................................................................12

Fed. R. Civ. P. 4(k)(2) .................................................................................7, 8, 16, 17

Fed. R. Civ. P. 9(b)......................................................................................................18

Fed. R. Civ. P. 12(b)(2) ..............................................................................................18

Fed. R. Civ. P. 12(b)(5) ..............................................................................................12

Fed. R. Civ. P. 12(b)(6) .......................................................................................20, 23

Fed. R. Evid. 201(b)(2)................................................................................................15

**Regulations**

37 C.F.R. § 2.33...........................................................................................................21

37 C.F.R. § 11.18.........................................................................................................21

**Other Authorities**

2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:61 (4th
    ed. 2006) ...............................................................................................................19

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

## I.    INTRODUCTION

2

Defendant Jonathan D. Morton is a U.S.-licensed attorney who partnered with a Chinese

3 company to procure fraudulent trademark registrations from the United States Patent and

4 Trademark Office ("USPTO"), which trademarks were used by certain clients to improperly gain

5 access to Amazon's intellectual property protection service and issue false notices of

6 infringement in the Amazon.com store (the "Amazon Store"). In his Motion to Dismiss, Morton

7 challenges service of process, personal jurisdiction, and the sufficiency of Amazon's claims.

8 Because none of Morton's arguments hold water, the Court should deny the Motion in its

9 entirety.

10 *First*, Morton ignores that the Court authorized email and mail service on Morton based

11 on Amazon's showing that it had attempted to serve Morton in Tokyo via Japan's Central

12 Authority pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial

13 Documents in Civil or Commercial Matters ("Hague Convention"). The Central Authority

14 delayed service for over 10 months after reporting that Morton did not respond to attempted

15 service. Because the Hague Convention permits alternative service where a country's central

16 authority fails to complete service within six months, the Court properly authorized alternative

17 service on Morton. Morton cannot dispute that he is on notice of this lawsuit and has an

18 opportunity to respond.

19 *Second*, Morton's challenge to personal jurisdiction ignores facts demonstrating that

20 Morton procured fraudulent trademarks for clients knowing the trademarks would be used in the

21 Amazon Store and would damage Amazon in Washington. Alternatively, if specific jurisdiction

22 does not exist in Washington, this Court has jurisdiction under Federal Rule of Civil Procedure

23 4(k)(2) because Amazon asserts a federal claim against Morton, no other state has jurisdiction

24 over Amazon's claims against Morton, and Morton's trademark scheme targeted the U.S. as a

25 whole.

26

27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

*Finally*, Morton's cursory arguments that Amazon's claims are insufficiently pled either disregard the First Amended Complaint's detailed allegations or improperly raise issues of fact. Morton's self-serving declaration cannot overcome Amazon's well-pled claims.

## II.    FACTUAL BACKGROUND

### A.    Morton Partners with Asin in Fraudulent Trademark Scheme.

Morton, a U.S.-licensed attorney, entered into an agreement with Asin Enterprise Management Consulting Ltd. Co. ("Asin"), a China-based company, to serve as the attorney of record on thousands of trademark applications that were filed with the USPTO on behalf of Morton's and Asin's clients (¶¶ 2, 13, 60-61, 73).[1] Asin's primary clients were businesses and individuals in China seeking a trademark registration in order to gain access to Amazon's Brand Registry program; indeed, the company's website actively targeted Amazon sellers (¶ 53). Under its business arrangement with Morton, Asin prepared and filed trademark applications using Morton's name and credentials, often with little or no review or involvement by Morton (¶¶ 2, 13, 61-62, 73-75).

Morton allowed Asin to use his credentials in order to circumvent the USPTO's "U.S. counsel rule," which requires foreign-domiciled trademark applicants to use a U.S.-licensed attorney (¶¶ 2, 60-61, 73). The applications submitted under Morton's name frequently contained false statements and fabricated specimens of use. Morton either did not review these filings or performed only a cursory review, sometimes allowing Asin to file documents under his name without any input (¶¶ 61-62, 75-76, 84, 102).

### B.    Morton Facilitates Clients' Opening of Brand Registry Accounts Using Fake Trademarks.

***The Brand Registry Program.*** Brand Registry is a free service offered by Amazon that provides rightsholders with enhanced tools for monitoring and reporting potential intellectual property infringement in the Amazon Store (¶ 35). The program uses machine learning to predict potential infringement and offers advanced search utilities, including state-of-the-art image

---

[1] Unless otherwise indicated, citations in this Section are to the First Amended Complaint ("FAC"), Dkt. 5.

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 8
(2:24-cv-01471-JLR)

search technology, to help brands proactively protect their intellectual property. *Id*. Rights owners can report infringing listings through Brand Registry's "Report a Violation" tool (¶ 35).

   ***Eligibility for Brand Registry.*** To be eligible for Brand Registry, a rightsholder must have an active trademark registration or, in some circumstances, a pending trademark application (¶ 51). Amazon verifies eligibility by sending a registration code to the email address listed in the USPTO's records as the attorney of record for the trademark holder or applicant. *Id*. The applicant must provide this code to Amazon to confirm their ownership of the trademark. *Id*. Once enrolled, Brand Registry participants can use Amazon's tools to proactively protect their intellectual property by reporting infringements (¶¶ 35, 38).

   ***Morton Facilitates Opening of Brand Registry Accounts.*** Morton was aware that a substantial number of Morton's and Asin's clients sought to obtain entry to Brand Registry (¶ 74). First, a large number of the trademark applications submitted by Morton included specimens that purported to show use of the trademarks in the Amazon Store. *Id*. Second, Morton was listed as the attorney of record associated with email addresses in USPTO records that received more than 3,500 emails from Amazon. *Id*. These emails contained Brand Registry codes pursuant to applications made by Morton's clients to open Brand Registry accounts. *Id*. As the attorney of record, Morton or his agent would have passed these codes on to his clients so they could open the Brand Registry accounts (¶ 51). At least 3,500 of the fraudulent trademarks procured by Morton were used to open Brand Registry accounts, and a subset of these marks were then used to file false and abusive takedowns in the Amazon Store (¶ 69). At least 5,400 fraudulent takedown notices were submitted by Brand Registry accounts opened by Morton's clients (¶ 4).

   **C.    The USPTO Sanctions Morton.**

   On April 28, 2022, the USPTO entered a Final Order issuing sanctions against Morton and suspending him from practice before the USPTO for two years for assisting in the unauthorized practice of law and engaging in dishonest conduct (¶ 77; Declaration of Scott Commerson in Supp. of Amazon's Opp. to Def. Morton's Mot. to Dismiss ("Commerson

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Decl."), Ex. A).[2] Morton admitted to the USPTO that his usual practice was to briefly review (for two to ten minutes) applications prepared by Asin. In other instances, Morton would rely on review by his non-lawyer assistant. Morton acknowledged he did not perform the legal work required of the attorney of record under the USPTO's rules for applications filed by Asin; that he had no contact with his clients; and that he performed little to no diligence regarding the applications or specimens (¶ 75).

Morton further admitted that he typically did not conduct an independent investigation to determine whether the applications properly depicted the mark used in commerce, yet he routinely signed declarations attesting to facts he had not verified (¶ 76). The USPTO found that Morton breached multiple rules of professional conduct. The USPTO found that Morton's electronic signature was entered on 18 Response to Office Action forms within ten minutes, an "unlikely feat for any attorney to accomplish," indicating a lack of review (¶ 79; Commerson Decl. Ex. B at 7).

### D.    The Fraudulent Futaiphy and Tfnyct Trademarks.

The FAC provides two examples of fraudulent trademarks obtained by Morton. Morton was listed as attorney of record on the applications for the "Futaiphy" and "Tfnyct" trademarks, which were used to open Brand Registry accounts and submit fraudulent takedown notices in the Amazon Store. The applications for these marks included false declarations and fabricated specimens, and Morton either did not review them or had no basis for the attestations made under his name (¶¶ 80-114).

Morton and Asin knew their statements in the trademark applications regarding use in commerce and the specimens were false. The false statements were material to the USPTO's decision to issue the registrations and to Amazon's acceptance of the marks for the opening of

---

[2] The Final Order issuing sanctions against Morton and other USPTO orders against Asin are incorporated by reference into the FAC, and the Court can consider these documents. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 10
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1   Brand Registry accounts. Morton and Asin intended for the USPTO and Amazon to rely on their

2   false statements (¶¶ 89-91, 92-95, 107-109, 110-112).

3           **E.      Morton's Misconduct Harmed Amazon.**

4           Morton's fraudulent conduct caused significant harm to Amazon. By filing trademark

5   applications based on false attestations and fabricated specimens, Morton enabled unauthorized

6   access to Brand Registry, undermining the integrity of a system designed to protect legitimate

7   rightsholders (¶¶ 4-5). Morton's clients used these fraudulently-obtained registrations to submit

8   at least 5,400 false infringement notices, resulting in the removal of lawful product listings and

9   depriving legitimate sellers of revenue (*id.*). Amazon incurred substantial costs investigating and

10  reversing these fraudulent takedowns, diverting resources to restore affected listings and

11  maintain platform integrity (¶ 6). These actions disrupted seller relationships, eroded consumer

12  trust, and damaged the reliability of Amazon's marketplace protections (¶¶ 6, 10, 45).

13                    **III.     PROCEDURAL BACKGROUND**

14          **A.      Filing of Complaint and Service on Other Defendants.**

15          Amazon filed the Complaint on September 16, 2024, Dkt. 1, and the FAC on

16  November 14, 2024. Dkt. 5. In addition to Morton and Asin, the FAC named the individuals and

17  entities that submitted the false takedowns in the Amazon Store using the Futaiphy and Tfnyct

18  trademarks that Morton procured (the "False Takedown Defendants"). (¶¶ 8-9). All Defendants

19  except Morton are believed to reside in China. (¶¶ 8-9, 15-18, 53). On February 3, 2025,

20  Amazon served the False Takedown Defendants via certain email addresses pursuant to the

21  Court's order. *See* Dkts. 16, 17. On January 23, 2025, Amazon completed service on Asin in

22  China via the Hague Convention. Dkt. 20. On June 13, 2025, the Court entered defaults against

23  all Defendants except Morton. Dkt. 22.

24          **B.      Attempted Hague Service on Morton.**

25          Amazon attempted to serve Morton under the Hague Convention at an address in Tokyo,

26  Japan, that Morton confirmed was his current address. *See* Decl. of Scott Commerson in Supp. of

27  Amazon's *Ex Parte* Mot. for Alternative Serv. on Def. Morton, Dkt. 28, ¶¶ 3-4. On January 14,

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 11
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

2025, Amazon's foreign service agent submitted all necessary documents to Japan's Central Authority for service on Morton. *Id*. ¶ 4. The Central Authority returned the documents unserved after giving Morton a window of time to accept service. *Id.* ¶ 5. On June 2, 2025, Amazon's foreign service agent requested that the Central Authority reattempt service on Morton at the Japan address using a marshal. *Id*. However, Amazon's foreign service agent still has not received confirmation from the Central Authority that service has been completed on Morton. *Id*.

### C.    The Court Grants Alternative Service on Morton.

Given the Central Authority's 10-month-plus delay in effecting service, Amazon sought the Court's permission to serve Morton via (i) the email address he used to communicate with Amazon's counsel and that was listed for Morton in New York's attorney registration database, and (ii) via U.S. mail at the New York law firm address listed for Morton in the New York attorney registration database. Dkt 27. The Court granted the motion, Dkt. 29, and Amazon served Morton on December 5, 2025. Dkt. 30.

### IV.    ARGUMENT

### A.    The Court Should Deny the 12(b)(5) Motion.

Once service is challenged under Rule 12(b)(5), the plaintiff bears the burden of establishing that service was valid under Rule 4. *Burnell v. Lewis Brisbois Bisgaard & Smith LLP*, 2022 WL 2668247, at *2 (W.D. Wash. July 11, 2022). Proper service requires satisfying both Rule 4 of the Federal Rules of Civil Procedure and constitutional notions of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).

Rule 4 provides several options for effecting service in foreign countries and grants courts broad discretion to authorize service "by other means not prohibited by international agreement[.]" Fed. R. Civ. P. 4(f)(3). Morton argues that mail and email service were improper because they "directly contravene[d] the Hague Service Convention." Dkt. 32, ("Mot.") at 6. Yet Article 15 of the Convention provides that a court can approve alternative service when a country's central authority fails to complete service within six months. *See* Hague Convention, 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765, Art. 15; Fed. R. Civ. P. 4 advisory

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 12
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

committee's notes to 1993 amendment ("Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months."). Here, the Central Authority failed to complete service after more than 10 months. *See* Dkt. 28 at ¶¶ 4-5. Morton ignores these facts and the Court's order finding that alternative service was appropriate. Dkt. 29 at 5.

Similarly unavailing is Morton's cursory argument that service "violate[d] due process." Dkt. 32 at 6. Due process requires only that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Props., Inc.*, 284 F.3d at 1016 (cleaned up). Because Morton has long been on notice of this action and has an opportunity to present his objections, service was proper.

## B.    The Court Should Deny the 12(b)(2) Motion.

"Plaintiffs have the burden of demonstrating that the Court may exercise personal jurisdiction over defendants." *Hawes v. Kabani & Co., Inc.*, 182 F. Supp. 3d 1134, 1138 (W.D. Wash. 2016). "Where … the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (cleaned up). While a plaintiff cannot rest on bare allegations, "uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[Courts] may not assume the truth of allegations in a pleading which are contradicted by affidavit, but [must] resolve factual disputes in the plaintiff's favor." *Id.*

### 1.    The Court Has Specific Jurisdiction Over Morton.

The Ninth Circuit has identified a three-part inquiry for determining if a nonresident defendant has "minimum contacts" with the forum sufficient for specific jurisdiction: (1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 13
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alteration in original) (quoting *Dole*, 303 F.3d at 1111).

Where, as here, an action sounds in tort, courts apply an "effects test" to analyze whether the defendant "purposefully direct[ed] his activities" toward the forum. *Corker v. Costco Wholesale Corp.*, 585 F. Supp. 3d 1284, 1290, 1292. This test requires the plaintiff to show (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered, and which the defendant knows is likely to be suffered, in the forum state. *Dole*, 303 F.3d at 1111. Express aiming is satisfied when the defendant engages in acts targeted at the plaintiff the defendant knows to be a resident of the forum. *Id*.

***Purposeful Direction.*** Morton's trademark registration activities were intentional, and he knew that clients would be using certain trademarks in Amazon's Brand Registry program and the Amazon Store. FAC ¶¶ 25, 73-74; *Dole*, 303 F.3d at 1111 ("[T]he 'express aiming' requirement ... is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'")

Morton does not dispute receiving Brand Registry codes for clients, but asserts that he never provided the codes with "any intent to deceive or to harm Amazon." Decl. of Jonathan G. Morton ("Morton Decl.") Dkt. 32-1, ¶ 6. Morton's blanket denial of intent does not controvert Amazon's allegations that Morton knew his clients were using the trademarks in the Amazon Store. FAC ¶¶ 25, 73-74. Morton similarly does not dispute that "a large number of the trademark applications submitted by Morton … included specimens of use that purported to show use of the trademarks in the Amazon Store." FAC ¶ 74. Moreover, Morton entered into a business relationship with Asin, which expressly marketed its services to Amazon sellers. FAC ¶ 53. Undoubtedly, the alleged harm Amazon suffered occurred in Washington, its headquarters. FAC ¶ 12; *Dole*, 303 F.3d at 1113 (bad acts conducted in Europe harmed plaintiff at its headquarters in California). Morton does not dispute that he knew Amazon was located in Washington when the alleged acts causing Amazon harm were committed. *See* Morton Decl.

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 14
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Morton's argument that the FAC "merely asserts legal conclusions without factual allegations supporting an agreement or concerted action between Defendant [Morton] and Asin" (Mot. ¶ 14) ignores the allegations in the FAC that Morton and Asin entered into an agreement where he would serve as attorney of record for Asin's clients. FAC ¶¶ 14, 60, 73. Moreover, these allegations are supported by the USPTO's Show Cause Order against Asin and the Final Order entering sanctions against Morton, as well as by Morton's own declaration, which admits he worked with Asin to submit the applications they prepared. *Supra* § II.C.; Morton Decl. ¶ 8.

Morton has other connections to Washington, despite his blanket assertion to the contrary. For example, the USPTO's records reflect that Morton serves (or served) as attorney of record in at least 15 trademark applications or registrations for entities that are organized under Washington law or located in Washington. *See* Commerson Decl. Ex. C.[3] Thus, either Morton does not know who his clients are, or he is not being forthright. Mot. ¶ 2 ("Defendant does not have any former or present clients in the forum state….").

***Exercising Jurisdiction in Washington Is Reasonable.*** Exercising jurisdiction comports "with fair play and substantial justice" where doing so is reasonable. *Dole*, 303 F.3d at 1111. The reasonableness requirement "places upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a 'compelling case.'" *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (cleaned up), *overruled in part on other grounds by Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). Here, Morton does not present any arguments for unreasonableness other than the blanket assertion that he "has no connection whatsoever with the forum state," which is false. Mot. at 5. Therefore, Morton has failed to meet his burden to demonstrate jurisdiction in Washington is unreasonable. The Court should find that it has specific jurisdiction over Morton.

---

[3] The Court can take judicial notice of these government records under Federal Rule of Evidence 201(b)(2), which states, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) "court[s] may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (internal quotation marks and citation omitted); *United States v. Camp*, 723 F.2d 741, 744 n.** (9th Cir. 1984) (government documents that are in the public record are appropriate for judicial notice) (collecting cases).

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 15
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

1

2

### 2. Alternatively, the Court Has Jurisdiction Over Morton Pursuant to Rule 4(k)(2).

3

Alternatively, if specific personal jurisdiction does not exist over Morton, this Court has

4

jurisdiction under Rule 4(k)(2).[4] Rule 4(k)(2) provides that a court has jurisdiction over a foreign

5

defendant where (1) the plaintiff asserts a claim arising under federal law, (2) the defendant is

6

not subject to jurisdiction in any state's courts, and (3) exercising jurisdiction is consistent with

7

the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2); *Lang Van, Inc. v. VNG Corp.*,

8

40 F.4th 1034, 1040 (9th Cir. 2022). If the court has jurisdiction under Rule 4(k)(2), it can

9

exercise supplemental jurisdiction over state law claims that arise under the same nucleus of

10

facts as the federal claim. *Preferred Nutrition, Inc. v. Vanderhaeghe*, 2010 WL 11565193, at *16

11

(W.D. Wash. Nov. 22, 2010). It is the defendant's "burden to affirmatively identify a state in

12

which they are subject to jurisdiction in order to avoid application of Rule 4(k)(2)." *World Ass'n*

13

*of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*, --- F. Supp. 3d ---, 2025 WL

14

2591413, at *19 (W.D. Wash. May 23, 2025).

15

Here, the first requirement is met because Amazon has asserted a federal claim against

16

Morton under 15 U.S.C. § 1120. FAC ¶¶ 205-210. Amazon's state law claims against Morton—

17

for common law fraud and violation of the CPA—arise from the same nucleus of facts as the

18

Lanham Act claim for liability for a false or fraudulent trademark registration; namely, Morton's

19

facilitation of fraudulent trademarks used in the Amazon Store. *Id.* ¶¶ 161-168, 179-189, 205-

20

210.

21

On the second requirement, Morton does not identify any state other than Washington

22

that has jurisdiction over him. *See* Motion. Nor could Morton meet this burden. Morton states

23

that he is and was a resident of Japan at the time of the alleged wrongful conduct. Morton Decl.

24

¶ 2 ("I currently reside and have resided in Tokyo, Japan, *since before the events alleged in*

25

*Plaintiffs' Complaint*.") (emphasis added). And the registrations for the Futaiphy and Tfnyct

26

27

---

[4] Amazon is not required to have pled jurisdiction under Rule 4(k)(2) to rely on the provision. *Read v. Moe*, 899 F. Supp. 2d 1024, 1033–34 (W.D. Wash. 2012) ("Although Plaintiff did not mention Rule 4(k)(2) until her opposition to [defendant's] motion to dismiss, that does not prevent her from relying on it.").

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

trademarks list a purported business address for Morton in China. *See* Commerson Decl. Exs. D & E. Morton's licensure in New York would not confer jurisdiction over him there as "courts have rejected [the] argument" that "an attorney's license to practice law [is] an automatic consent to general personal jurisdiction" in a state. *Eastboro Found. Charitable Tr. v. Penzer*, 950 F. Supp. 2d 648, 655–56 (S.D.N.Y. 2013). Nor would the USPTO's location in Virginia confer jurisdiction in that state because contacts with federal agencies do not confer personal jurisdiction. *See App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 327–29 (D.D.C. 2015) (defendant's misrepresentations to Copyright Office did not confer jurisdiction). Thus, if jurisdiction does not exist in Washington, no other U.S. state has jurisdiction over Morton for Amazon's claims.

Finally, exercising jurisdiction comports with due process because Morton has sufficient contacts with the United States as a whole. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (due process analysis under Rule 4(k)(2) considers a defendant's contacts with the United States as a whole). The gravamen of the FAC is that Morton conspired with Asin to circumvent the USPTO's *U.S.* counsel rule by facilitating fraudulent *U.S.* trademark filings by foreign clients, and then those clients used the fraudulent trademarks to perpetrate abuse in Amazon's *U.S.* store. FAC ¶¶ 73-114. No other country has an interest in regulating Morton's fraudulent activities before the USPTO and how those activities impacted Amazon. Moreover, since 2015, Morton has appeared as attorney of record on over 500 trademark applications filed with the USPTO that list clients with addresses in the United States. Commerson Decl. Ex. C.

The United States has a strong interest "in providing a forum for its residents and citizens who are tortiously injured." *Dole*, 303 F.3d at 1115–16. Also, while Morton resides in Japan, he can "speak, read, and write English with ease," and he "is intimately familiar with the U.S. legal system" on account of his law degree. *Id*. at 1115. Finally, this Court has already granted Morton's request to appear remotely at pre-trial proceedings to minimize the inconvenience to

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

him. Dkt. 38. Because this Court's exercise of jurisdiction is consistent with due process, the Rule 12(b)(2) motion should be denied.[5]

### C.    The Court Should Deny the 12(b)(6) Motion.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Where a claim is based on allegations of fraud, "a party must state with particularity the circumstances constituting fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Amazon has adequately pled its claims against Morton for 15 U.S.C. § 1120, common law fraud, and the Consumer Protection Act.

### 1.    15 U.S.C. § 1120 Claim for False or Fraudulent Trademark Registration.

Section 1120 allows for damages arising from the procurement of a false or fraudulent trademark registration. The elements of a claim under Section 1120 are "(1) that defendant made a false representation to the PTO regarding a material fact; (2) that defendant knew that the representation was false; (3) that defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." *Bay State Sav. Bank v. Baystate Fin. Servs., LLC*, 484 F. Supp. 2d 205, 220 (D. Mass. 2007).[6] A plaintiff also must show damages arising from the false or fraudulent registration. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000). The only

---

[5] Should the Court find that Amazon has presented an insufficient basis for jurisdiction over Morton, Amazon requests jurisdictional discovery into Morton's contacts with the forum and with Amazon, his knowledge of his clients' contacts with Amazon, and his trademark registration activities in the U.S. as a whole. *See Griggs v. Am. Int'l Grp., Inc.*, 2014 WL 2573300, at *3 (W.D. Wash. June 9, 2014) (jurisdictional discovery appropriate where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.").

[6] Contrary to Morton's assertion, a Section 1120 claim does not require that a plaintiff plead that a defendant "intended to cause harm" to the plaintiff with his fraudulent trademark filings. Mot. ¶ 17.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

elements of the 1120 claim that Morton challenges in the Motion are knowledge/intent and damages. Mot. at 7, ¶¶ 15-17. While Morton has waived any argument that the other elements are not sufficiently pled,[7] Amazon will address each element.

*False Representation***.** Out of Morton's thousands of fraudulent trademark filings, the FAC details two trademark registrations—the Futaiphy and Tfnyct trademarks—that Morton procured based on material false statements to the USPTO. FAC ¶¶ 80-114. The applications to register these marks falsely bore Morton's signature, when in fact they were prepared, signed, and filed entirely by Asin pursuant to Morton's agreement allowing Asin to file trademark applications using his credentials. *Id.* ¶¶ 14, 79, 83, 101. In addition, Morton falsely affirmed in the applications that he had conducted "an inquiry reasonable under the circumstances" to form a basis for his statements that the applied-for marks were in use in commerce, and that the specimens submitted with the applications showed actual use of the marks in commerce. *Id.* ¶¶ 84-85, 102-103. In fact, the specimens filed with the applications to register the Futaiphy and Tfnyct trademarks were fabricated, including through the use of non-existent addresses for purported customer orders. *Id.* ¶¶ 86-87; 104-105. These allegations are sufficient to plead the element of a false statement to the USPTO. *See United Phosphorus*, 205 F.3d at 1226 (false declaration in trademark application sufficient for 1120 claim).

*Scienter.* "The 'knowledge' element [under Section 1120] is satisfied where the applicant made material statements [to the USPTO that] it knew or should have known were false." *Bay State*, 484 F. Supp. 2d at 220 (citing 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:61 (4th ed. 2006)). he FAC alleges that Morton knew the statements in the declarations were false based on his admissions in the USPTO's Final Sanction Order that he: (1) "accepted a large volume of clients such that he could not devote sufficient time to review their trademark filings;" (2) "failed to devote sufficient time to client matters and failed to adequately review trademark applications, including failing to properly review specimens-of-use

---

[7] "The courts of this Circuit do not permit parties to raise new arguments in a reply brief, in part because it deprives the other party of an opportunity to respond." *Encinas v. Univ. of Wash.*, 2022 WL 4598083, at *7 (W.D. Wash. Sept. 20, 2022) (refusing to consider arguments in a reply brief that defendant did not raise in its motion to dismiss).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

to confirm the mark showed actual use in commerce;" (3) "allowed non-practitioners to prepare and file trademark documents with the USPTO on behalf of clients without properly vetting such documents prior to their filings;" (4) "did not adequately review legal work performed by his non-practitioner assistant before documents were signed and filed with the USPTO;" (5) "signed declarations attesting that clients' marks were in use in commerce (or that the specimen showed such use in commerce) but had not always performed a reasonable inquiry to check if that was accurate." FAC ¶¶ 75-78, 89, 107. In addition, the USPTO's Show Cause Order found that Morton submitted numerous trademark applications containing specimens from the same sham storefront, when a diligent review would have shown the specimens were fabricated. *Id.* ¶ 79. Coupled with the specific facts showing the fraudulent nature of the Futaiphy and Tfynct applications (*id.* ¶¶ 85-87, ¶¶ 104-105), these facts are sufficient to show that Morton knew that the statements in the applications were false, including Morton's statement that he had made "an inquiry reasonable under the circumstances" to verify that each averment in the application had evidentiary support. *Id.* ¶¶ 84, 102.[8]

Morton misconstrues the standard on a 12(b)(6) motion when he argues that "there is no evidence that Defendant intentionally filed fraudulent applications or intended to cause harm." Mot. ¶¶ 16-17. On a Rule 12(b)(6) motion, "[m]aterial allegations are taken as admitted and the complaint is construed in the plaintiff's favor." *Nixon v. Franciscan Health Sys.*, 2011 WL 1772587, at *1 (W.D. Wash. May 10, 2011). Thus, the Court cannot credit Morton's self-serving declaration in which he disclaims fraudulent intent, as such factual disputes cannot be resolved on the pleadings. *See McGuire v. Dendreon Corp.*, 2008 WL 5130042, at *6–7 (W.D. Wash. Dec. 5, 2008) (denying motion to dismiss where defendants "muster[ed] an impressive array of arguments" that defendants lacked scienter, as plaintiffs only needed to "create an inference of fraudulent intent which is 'cogent and at least as compelling as any opposing inference of nonfraudulent intent'"); *see also United Phosphorus*, 205 F.3d at 1227 (upholding jury's finding

---

[8] The applications that Morton signed also acknowledged that willful false statements could be punishable by imprisonment. *See, e.g.,* Commerson Decl. Ex. E at 5.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

that defendants intentionally made false statements in a trademark application despite defendants' testimony that they had no intent to make the false statements). And, again, Morton conflates an intentional false statement with an intent to cause harm.

While Amazon has sufficiently alleged scienter, Amazon notes that some courts have held that a merely false statement, without scienter, is sufficient for a Section 1120 claim. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am.*, 158 F. Supp. 277, 278 (D.N.J. 1958) ("I conclude that 'false' and 'fraudulent' as used in 15 U.S.C. § 1120 are not synonymous, and that damages are recoverable thereunder where the registration is procured either by a declaration which was incorrect or by a declaration which was a willful attempt to mislead and injury has resulted as a consequence thereof."); *DeMert & Dougherty, Inc. v. Chesebrough-Pond's, Inc*., 348 F. Supp. 1194, 1196 (N.D. Ill. 1972).

***Reliance by USPTO.*** There is no question that, by signing the declarations to register the Futaiphy and Tfnyct trademarks and filing the applications with the USPTO, Morton intended for the USPTO to rely on these statements and that the USPTO did in fact rely on them by issuing the registrations. FAC ¶¶ 8-9, 90, 108. The USPTO's regulations require declarations in an application to register a trademark, and without them the USPTO will not consider the filing. *See* 37 C.F.R. § 2.33 (trademark application must contain a verified statement that the mark is in use in commerce and that the specimen shows such use); 37 C.F.R. § 11.18 (all documents filed with the USPTO must contain the aforementioned declaration).

***Damages.*** Amazon was damaged by the fraudulently-obtained Futaiphy and Tfnyct registrations when the False Takedown Defendants used those trademarks to gain access to Brand Registry and then submitted false notices of infringement in the Amazon Store based on those fake marks. *See* FAC ¶¶ 116-137. Amazon has alleged damages that include its costs of investigating and remediating this misconduct, the harm to its reputation, and the lost revenue from improperly removed listings. *Id*. ¶¶ 10, 45, 81, 99, 144, 154, 209. *See Acad. Award Prods., Inc. v. Bulova Watch Co.*, 233 F.2d 449, 450 (2d Cir. 1956) (upholding district court award of

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 21
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

damages under 15 U.S.C. § 1120 for litigation expenses incurred in cancelling the registration and defending a claim of infringement of the cancelled mark).

Amazon has properly pled all the elements of its Section 1120 claim.

### 2.   Consumer Protection Act Claim.

The elements of a CPA claim are "'(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to … business or property, and (5) causation.'" *Shields v. Fred Meyer Stores Inc*., 741 F. Supp. 3d 915, 930 (W.D. Wash. 2024) (quoting *Panag v. Farmers Ins. Co. of Wash*., 166 Wn.2d 27, 37 (2009)), *as amended*, 796 F. Supp. 3d 740 (W.D. Wash. 2025). Morton challenges only two elements: public interest and causation. Mot. at 7.[9]

***Public Interest.*** The entirety of Morton's argument on the CPA claim is that Amazon "fail[ed] to identify any applicable consumer transactions which Defendant participated in." *Id.* at 7, ¶ 19. However, a plaintiff is not required to allege that a defendant "participated" in a "consumer transaction" to satisfy the public interest element. *Id*.; *see Panag*, 166 Wn.2d at 43– 44 (permitting a CPA claim related to allegedly deceptive efforts to collect on an insurance company's subrogation claim against an underinsured motorist and holding "that a private CPA action may be brought by one who is not in a consumer or other business relationship with the actor against whom the suit is brought"); *see also Bushbeck v. Chi. Title Ins. Co*., 632 F. Supp. 2d 1036, 1043 (W.D. Wash. 2008) (denying dismissal of CPA claim based on a loan transaction where plaintiff alleged a payment was misapplied). Rather, a defendant's act or practice affects the public interest if it injured, or had the capacity to injure, *persons other than the plaintiff*. RCW 19.86.093. "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 790 (1986) (*en banc*).

---

[9] Morton has waived any arguments that Amazon has not pled the other elements of a CPA claim. *See, e.g.*, *Shields*, 741 F. Supp. 3d at 930 (only addressing the two elements of the CPA claim defendant contested in their motion to dismiss and treating defendant's "silence as a concession that Plaintiff satisfies the other elements").

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Here, Morton and Asin procured thousands of fraudulent trademarks, some of which were used by clients to unfairly attack sellers and take down legitimate listings. FAC ¶¶ 13-14, 72-73. Morton's conduct affected not only Amazon, but also the third-party sellers whose listings were temporarily taken down and customers whose product selection was reduced. FAC ¶¶ 4, 10, 81, 99. Also, the fraudulent trademarks that Morton procured could be used by clients to post false notices of infringement in *other* stores or websites beyond the Amazon Store. Because Morton's conduct clearly affects persons other than Amazon, the public interest element is satisfied.

*Causation.* Morton generally attacks the causation element of Amazon's claims. He argues that Amazon "fail[ed] to allege that Defendants directly caused harm" and that Amazon's "[a]llegations against Defendant are speculative and lack[] evidence of causal harm upon Plaintiffs by Defendant[s]." Mot. at 7, ¶ 15. Morton ignores the FAC's allegations that Morton knowingly procured fraudulent trademarks and then facilitated his clients' opening of Brand Registry accounts using those marks. FAC ¶¶ 73-79. Morton's conduct caused injury to Amazon, as Amazon expended resources to investigate and remediate the false infringement notices that Morton's clients submitted based on fraudulent trademarks that Morton procured. FAC ¶¶ 10, 45, 81, 99, 144, 154. The false notices also harmed Amazon's reputation with customers and selling partners, as the notices caused the temporary removal of sellers' listings and the diversion of sales from such listings. FAC ¶¶ 10, 165-167. These facts plausibly establish loss causation. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (accepting as true plaintiff's allegations that defendants' misleading statements about improper off-label marketing of prescription drugs caused a price drop when revealed to the public, and stating that "[s]o long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate."); *Quan Nguyen v. Diamond Resorts Int'l Mktg., Inc.*, 2019 WL 316709, at *4 (W.D. Wash. Jan. 24, 2019) (finding that plaintiff's allegations that his unlawful termination was caused by his efforts to have subordinates comply with the

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 23
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

Telemarketing and Consumer Fraud and Abuse Prevention Act were sufficient, and denying

defendants' 12(b)(6) motion because causation "is a question of fact").

Amazon has sufficiently pled its CPA claim.

### 3.    Common Law Fraud Claim.

Finally, Amazon asserts a common law fraud claim against Morton for knowingly

making "false statements to the USPTO in connection with [the] applications [he filed] to

register the Futaiphy Trademark, the Tfnyct Trademark, and at least 221 other trademark

applications that bad actors used to create Brand Registry Accounts and issue false takedowns in

the Amazon Store." FAC ¶ 180. The Court is familiar with the elements of a fraud claim under

Washington law. *Martin v. Miller*, 24 Wn. App. 306, 308 (1979) (summarizing elements). In the

Motion, Morton contests only intent and causation, and he has waived arguments on the other

elements. Mot. ¶¶ 15-17, 20-21.[10]

*Intent.* For scienter, it is sufficient to allege that the defendant's statements were either

knowingly false when made or made with reckless disregard for the statements' falsity. *Maring*

*v. PG Alaska Crab Inv. Co., LLC*, 2006 WL 328400, at \*2 (W.D. Wash. Feb. 10, 2006) (reckless

disregard sufficient for fraud claim); *Matter of Est. of Lint*, 135 Wn. 2d 518, 533 n.4 (1998)

("The elements of fraud are:… knowledge of the falsity or reckless disregard as to its truth[.]").

As discussed on the Section 1120 claim, the FAC describes in detail how Morton's trademark

filings contained knowingly false statements. First, the FAC alleges that Morton knew that Asin

prepared, signed, and filed the Futaiphy and Tfnyct trademark applications using his credentials.

FAC ¶¶ 75, 79, 83, 101. Indeed, the USPTO's Show Cause Order against Asin found that "[a]

representative sample of filings from April 30, 2021 shows Mr. Morton's electronic signature

being entered on 18 Response to Office Action forms within ten minutes, an unlikely feat for any

attorney to accomplish." *Id.* ¶ 79 (alteration in original). The FAC alleges that Morton and Asin

engaged in a collaboration where Asin filed documents with the USPTO using his name. *Id*.,

---

[10] For the same reasons discussed above with respect to the CPA claim, Amazon has sufficiently alleged causal
losses from Morton's fraudulent activities.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

¶¶ 75, 79. The Court should reject Morton's attempts to resolve a factual dispute through a self-serving declaration, as all inferences must be drawn in Amazon's favor. *See Pino v. Cardone Cap., LLC*, 139 F.4th 1102, 1111 (9th Cir. 2025) (reversing district court's granting of motion to dismiss where court improperly credited defendants' statements in SEC filings that contradicted plaintiff's allegations in complaint).

The FAC further alleges that even if Morton filed both those applications—rather than allowing Asin to file them with his credentials—the applications contained declarations that Morton has acknowledged were false. By signing the applications, Morton certified that to the best of his "knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support[.]" FAC ¶¶ 64, 84, 102, 183, 198. The FAC alleges that the certifications in the trademark applications that Morton filed were false and he knew them to be false because he spent only a few minutes reviewing each application, even less if his assistant reviewed it. *Id.* ¶¶ 84-85, 102-103. In the Final Order entering sanctions, Morton "acknowledge[d] that he did not conduct a pre-filing inquiry reasonable under the circumstances with respect to a number of trademark applications to determine whether the specimens submitted in his clients' trademark applications properly depicted the mark as used in commerce," despite signing declarations to the contrary. Commerson Decl., Ex. A at ¶ 15. Thus, Amazon has plausibly alleged Morton's scienter.

Even assuming Morton did not believe his statements were false or that the specimens were fraudulent, his lack of a basis for making these certifications in the applications is sufficient for fraud. *See Nw. S.S. Co. v. Dexter Horton & Co.*, 29 Wash. 565, 569 (1902) (fraud claims can be based on "reckless statements, without knowledge whether they are true or false … and representations accompanied by a false assumption of knowledge, express or implied").

*Reliance.* Although not challenged by Morton, Amazon has also adequately alleged that it relied on Morton's false statements in the applications when it provided clients with access to Brand Registry. FAC ¶ 187. Amazon had a right to rely on these statements because the purpose of a trademark application or registration is to signal to the public a person's ownership of rights

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

in a mark. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 305 (9th Cir. 1992) (the purpose of a trademark is to identify the manufacturer or sponsor of a good or the provider of a service); 15 U.S.C. § 1072 ("[r]egistration of a mark on the principal register provided by this chapter … shall be constructive notice of the registrant's claim of ownership thereof").

Even though Morton's false statements were made to the USPTO rather than to Amazon, Amazon can state a fraud claim based on its reasonable reliance on those statements. *See, e.g.*, *Martin*, 24 Wn. App. at 310 (where a speaker knows and intends, or has reason to know and expects, that the recipient will transmit the information to a person or a class of person, the speaker can be liable for fraud to that third party); *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wn. App. 840, 883-84 (2013) ("Accountants may face liability for negligent misrepresentation in audit reports, provided that the maker of the representation knows that its recipient intended to transmit the information to a similar person, persons, or group.") (internal citations omitted), *aff'd*, 180 Wn.2d 954 (2014), *aff'd*, 190 Wn.2d 281 (2018). Here, certain Defendants opened Brand Registry accounts using the Futaiphy and Tfnyct trademark applications. FAC ¶¶ 8-9, 48-51. Morton was aware that his clients were using the trademark applications he filed to access Brand Registry, including the Futaiphy and Tfnyct trademark applications. When Morton's clients created Brand Registry accounts using the trademark applications filed under his name, as the attorney of record listed in those applications, Morton received emails from Amazon with the authorization codes necessary to open those Brand Registry accounts, which he then forwarded to his clients. FAC ¶¶ 25, 51, 74, 94, 111. Thus, Morton was aware that Amazon would rely on the trademarks filed under his name in providing his clients access to Brand Registry. *Id*.

Amazon has sufficiently pled its common law fraud claim against Morton.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1

## V.    CONCLUSION

For the foregoing reasons, Amazon requests that the Court deny the Motion in its

entirety.[11]

DATED this 20th day of January, 2026.

*I certify that this memorandum contains 7,526 words, in compliance with the Local Civil*

*Rules.*

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Amazon*

*/s/ Scott Commerson*
Scott Commerson, WSBA #58085
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071-3460
Tel: (213) 633-6800
Fax: (213) 633-6899
Email: scottcommerson@dwt.com

---

[11] If the Court finds that Amazon has not sufficiently pled any claims against Morton, it should grant leave to replead. *See Levine v. Safeguard Health Enters., Inc*., 32 F. App'x 276, 278 (9th Cir. 2002) (leave to amend should be granted unless the pleading cannot be cured by allegation of other facts). Also, the Motion inexplicably asserts that Amazon's claims for malpractice, conspiracy, and tortious interference fail. Mot. at 7-9, ¶¶ 18, 22-25. Amazon has not pled these claims against Morton and therefore this opposition does not address them.

AMAZON'S OPPOSITION TO MOTION TO DISMISS - 27
(2:24-cv-01471-JLR)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax