UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., et al.,

                 Plaintiffs,

     v.

JONATHAN G. MORTON, et al.,

                 Defendants.

CASE NO. C24-1471JLR

ORDER

## I.     INTRODUCTION

Before the court is *pro se* Defendant Jonathan G. Morton's motion to dismiss Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC's (together, "Amazon") amended complaint.  (MTD (Dkt. # 32); Reply (Dkt. # 41); *see* Am. Compl. (Dkt. # 5).)  Amazon opposes the motion.  (Resp. (Dkt. # 39).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised, the court DENIES Mr. Morton's motion to dismiss.

ORDER - 1

## II.   BACKGROUND

**A.   Factual Background**

Mr. Morton is a New York-licensed patent and trademark attorney who has resided in Japan since 2015.  (Morton Decl. (Dkt. # 32-1) ¶ 2; MTD at 2.)  Amazon[1] alleges that Mr. Morton entered into an agreement with Defendant Asin Enterprise Management Consulting Ltd. Co. ("Asin"), a China-based company, to serve as attorney of record on thousands of trademark applications that were filed with the United States Patent and Trademark Office ("USPTO") on behalf of their clients.  (Am. Compl. ¶¶ 2, 13, 60-61, 73.)

Amazon asserts that Asin's clients were business and individuals in China who sought trademark registrations so that they could gain access to Amazon's Brand Registry program, which provides trademark holders tools for monitoring and reporting potential infringement in the Amazon Store.  (*Id.* ¶¶ 35, 53.)  It further alleges that Asin prepared and filed trademark applications under Mr. Morton's name and credentials, often without Mr. Morton's involvement and review, and that Mr. Morton was sanctioned by the USPTO for this conduct.  (*Id.* ¶¶ 2, 13, 61-63 (discussing the USPTO's finding that Asin willfully provided false information in trademark submissions, including applications bearing Mr. Morton's credentials), 73-76 (discussing Mr. Morton's role in the scheme and admissions to the USPTO), 77-78 (discussing the USPTO's findings in an April 2022 order issuing sanctions against Mr. Morton).)  According to Amazon, these trademark

_____

[1] Amazon.com, Inc. and Amazon.com Services LLC are Delaware corporations with their principal places of business in Washington.  (Am. Compl. ¶ 12.)

applications frequently contained false statements and fabricated specimens of use.  (*See id.* ¶¶ 80-114 (discussing the fraudulent applications for the Futiaphy and Tfnyct trademarks (together, the "Marks")).)  After opening Brand Registry accounts using the fraudulent trademark registrations, some of Mr. Morton's clients "submitted false intellectual property infringement notices to Amazon in an effort to remove content and product listings of Amazon selling partners from the Amazon Store."  (*Id.* ¶ 1.)  In some cases, the false takedown notices resulted in Amazon temporarily removing legitimate product listings, which deprived those sellers of sales while their listings were suppressed.  (*Id.* ¶ 4.)  Amazon alleges that it incurred substantial costs in investigating and remedying the fraudulent takedowns.  (*Id.* ¶ 10.)

On September 16, 2024, Amazon filed its initial complaint seeking cancellation of federal trademark registrations, damages, and equitable relief against Mr. Morton, Asin, and four defendants who, according to Amazon, filed false takedown notices through Brand Registry based on the fraudulent Marks (the "False Takedown Defendants").[2]  (*See generally* Compl. (Dkt. # 1).)  It amended its complaint on November 14, 2024.  (Am. Compl.)  Amazon raises three of its eight causes of action against Mr. Morton:  violation of the Washington Consumer Protection Act ("WCPA"), RCW 19.86.010, *et seq.* (*id.* ¶¶ 161-68); common-law fraud based on fraudulent trademark filings (*id.* ¶¶ 179-89); and

---

[2] The False Takedown Defendants are Shenzhen Luna Technology Co., Ltd., Huanhuan Liao, Chenliang Zhong, and Guoliang Zhong.  (Am. Compl. ¶¶ 15-18.)  The Clerk entered default against the False Takedown Defendants and Asin on June 13, 2025.  (Entry of Default (Dkt. # 22)

ORDER - 3

civil liability for false or fraudulent registration of trademarks in violation of the Lanham Act, 15 U.S.C. § 1120 (*id.* ¶¶ 205-10).

After Amazon filed its complaint, its counsel communicated with Mr. Morton by email and by telephone.  (11/25/25 Commerson Decl. (Dkt. # 28) ¶ 3.)  Although Mr. Morton confirmed that Amazon had identified his correct residential address in Japan, he declined to waive service.  (*Id.*)  Amazon then began the process of serving Mr. Morton pursuant to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention").  (*Id.* ¶ 4.)  Amazon's foreign service agent first submitted the necessary documents to Japan's Central Authority for service on Mr. Morton on January 14, 2025, but the Central Authority returned the documents unserved.  (*Id.* ¶¶ 4-5.)  On June 2, 2025, Amazon's foreign service agent asked the Central Authority to reattempt service on Mr. Morton using a marshal.  (*Id.* ¶ 5.)  As of November 25, 2025, Amazon had not received confirmation from the Central Authority that service had been completed.  (*Id.*)

Amazon then moved for leave to serve Mr. Morton by email to the address he used to communicate with Amazon's counsel and by certified mail to the New York address listed for Mr. Morton in New York State's attorney registration database.  (Mot. for Alt. Service (Dkt. # 27) at 2, 7; *see* 11/25/25 Commerson Decl. ¶ 2.)  The court granted Amazon's request.  (12/1/25 Order (Dkt. # 29) at 3-5.)  Amazon completed service on Mr. Morton by email and certified mail on December 8, 2025.  (12/9/25 Cert. (Dkt. # 30).)  Mr. Morton appeared in the case on December 10, 2025.  (12/10/25 Notice (Dkt. # 31).)

ORDER - 4

Mr. Morton filed his motion to dismiss on December 23, 2025.  (MTD.)  He asserts that the court must dismiss Amazon's claims against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); improper service of process under Federal Rule of Civil Procedure 12(b)(5); and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*See generally id.*)  The motion is now fully briefed and ripe for decision.

### III.    ANALYSIS

Below, the court considers Mr. Morton's arguments and concludes that none warrant dismissal of this action.

**A.    Motion to Dismiss for Lack of Personal Jurisdiction**

Rule 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of showing jurisdiction is proper.  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (cleaned up)).  The court does not assume the truth of allegations in the complaint that are contradicted by the defendant's declarations or affidavits.  *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022).  Factual disputes, however, are resolved in the plaintiff's favor.  *Id.*

ORDER - 5

A district court can exercise personal jurisdiction over a defendant "if the defendant has 'minimum contacts' with the forum—which means that the contacts must be 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (cleaned up) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). "A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render [them] essentially at home in the forum State.'" *LNS Enters.*, 22 F.4th at 859 (citation omitted). Specific personal jurisdiction, meanwhile, applies when the defendant has sufficient "case-linked" contacts with the forum state. *Davis*, 71 F.4th at 1161 (quoting *Ford*, 592 U.S. at 358).

Here, Amazon asserts that the court has specific personal jurisdiction over Mr. Morton. (Am. Compl. ¶¶ 22, 25.) District courts apply a three-pronged test when determining whether to exercise specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden

ORDER - 6

then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985)).  For claims sounding in tort, like the trademark claims at issue here, courts "most often employ a purposeful direction analysis" when evaluating the first prong of the specific jurisdiction test.  *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) (en banc) (citations omitted); *see Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (applying the purposeful direction analysis because "[t]rademark infringement is treated as tort-like for personal jurisdiction purposes").  Purposeful direction "requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (citations omitted).

Mr. Morton's arguments focus on the first and third prongs of the specific jurisdiction test.  He argues that the court lacks personal jurisdiction over him because he resides in Japan, conducts business outside of the United States, has no clients in Washington, and has neither worked in nor purposefully availed himself of conducting business in Washington.  (MTD at 5; *see* Morton Decl. ¶¶ 3-5.)  He further asserts that Amazon fails to allege that he has any contacts with Washington or that he has engaged in intentional conduct directed at Washington, and he denies having knowingly participated in any agreement with Asin "to submit false trademark applications, false trademark application specimens[,] or to misuse Amazon's brand registry platform." (MTD at 5; Morton Decl. ¶¶ 6-7.)  As a result, according to Mr. Morton, the exercise of jurisdiction over him in Washington would be unreasonable.  (MTD at 5.)

ORDER - 7

Amazon, however, plausibly alleges that this court has personal jurisdiction over Mr. Morton because he and Asin "acted in concert to commit, or facilitate the commission of, tortious acts directed at Washington, and each has wrongfully caused Amazon substantial injury in Washington." (Am. Compl. ¶ 23.)  Amazon further alleges that Mr. Morton and Asin (1) "knew and intended that the fraudulent trademark applications they facilitated on behalf of their clients . . . would be used to improperly open Brand Registry accounts[;]" (2) "received registration codes at the email addresses provided for the attorney of record for the trademark applications . . . associated with the Futaiphy and Tfnyct Trademarks[;]" (3) "sent the respective codes to their clients, including . . . the False Takedown Defendants, so their clients could complete the Brand Registry registration process using the fake trademarks that [Mr.] Morton and Asin [] procured[;]" and (4) "knew that certain of their clients . . . were improperly opening Brand Registry accounts in order to engage in abusive conduct targeting the Amazon Store[.]" (*Id.*)

Although Mr. Morton denies these allegations, the court must resolve factual disputes in Amazon's favor when evaluating personal jurisdiction.  *See LNS Enters.*, 22 F.4th at 858.  The court concludes that Amazon has sufficiently alleged facts that satisfy the three elements of the purposeful direction test for specific jurisdiction.  (*See* Am. Compl. ¶ 23); *see Briskin*, 135 F.4th at 751.  The court further concludes that Mr. Morton has not met his burden to present a "compelling case" that the exercise of jurisdiction in Washington would be unreasonable; to the contrary, he merely relies on his asserted lack of contacts with Washington.  (*See* MTD at 5); *see Schwarzenegger*, 374

ORDER - 8

F.3d at 802.  Therefore, the court denies Mr. Morton's motion to dismiss for lack of personal jurisdiction.

**B.      Motion to Dismiss for Improper Service of Process**

Rule 12(b)(5) authorizes dismissal due to insufficient service of process.  Fed. R. Civ. P. 12(b)(5); *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process . . . a court ordinarily may not exercise power over a party the complaint names as defendant.") (citations omitted).  When a defendant challenges service, the plaintiff bears the burden of establishing the validity of service.  *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  If the plaintiff is unable to satisfy this burden, a court "has discretion to dismiss an action or to quash service."  *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citation omitted).  "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  *SEC v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2017) (internal quotations and citation omitted).

Mr. Morton asserts that the court must dismiss this matter because the Hague Convention is "a mandatory, exclusive procedure for serving judicial documents abroad" and, as a result, Amazon's attempt to serve him by email and certified mail is invalid. (MTD at 6.)  The court disagrees.

Service of process on an individual in a foreign country is governed by Federal Rule of Civil Procedure 4(f).  Because Japan is a signatory to the Hague Convention, service may be effected under Rule 4(f)(1), which provides that an individual may be

ORDER - 9

served by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention[,]" or Rule 4(f)(3), which allows for service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3).  Article 15 of the Hague Convention allows for alternative methods of service where a country's Central Authority does not complete service within six months of a party's request.  *See* Fed. R. Civ. P. 4, Advisory Notes ("The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months.").  A federal court may, however, direct service in a signatory country pursuant to Rule 4(f)(3) even if a plaintiff has not yet attempted service under Hague Convention.  *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015-16 (9th Cir. 2002) (holding that Rule 4(f)(3) is an "equal means of effecting service of process").  The method of service chosen must "comport with constitutional notions of due process[;]" that is, it "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  District courts have discretion to allow a broad range of alternative methods of service, including "publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email."  *Id.* at 1016 (compiling cases).

Here, Amazon attempted service on Mr. Morton through Rule 4(f)(1) and the Hague Convention beginning in January 2025.  (11/25/25 Commerson Decl. ¶¶ 4-5.)  Ten months later, after Japan's Central Authority failed to serve Mr. Morton, Amazon moved under Rule 4(f)(3) for alternate service by email to the email address Mr. Morton used to communicate with Amazon's counsel and certified U.S. Mail to Mr. Morton's New York address.  (*See generally* Mot. for Alt. Service.)  The court granted the motion because more than six months had passed since Amazon began its efforts to serve Mr. Morton through the Hague Convention and because Amazon showed that communication by email had in fact apprised Mr. Morton of the pendency of this action.  (*See generally* 12/1/25 Order.)  Mr. Morton promptly appeared in this case after Amazon served him and presented his objections through his motion to dismiss.  (*See* 12/9/25 Cert.; 12/10/25 Notice; MTD.)  For these reasons, the court concludes that service by email to Mr. Morton's email address and by certified mail to Mr. Morton's New York address satisfies Rule 4(f)(3) and "comport[s] with constitutional notions of due process." *Rio Props.*, 284 F.3d at 1016.  Accordingly, the court denies Mr. Morton's motion to dismiss for insufficient service of process under Rule 12(b)(5).

**C.      Motion to Dismiss for Failure to State a Claim**

Mr. Morton moves under Rule 12(b)(6) to dismiss Amazon's claims for violations of the WCPA, common-law fraud based on the false registration of trademarks, and civil

//

//

//

ORDER - 11

liability for fraudulent registration of trademarks.[3]  The court begins by setting forth the legal standard and then considers Mr. Morton's arguments, beginning with Amazon's fraudulent registration of trademark claim

### 1.    Legal Standard

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6); *see also* Fed R. Civ. P. 8(a)(2) (requiring the plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief").  Under this standard, the court construes the allegations in the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The court "is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff."  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998) (citation omitted).  The court may also consider judicially noticeable material and documents incorporated by

---

[3] Mr. Morton also moves to dismiss certain claims that Amazon did not raise against him, such as conspiracy, tortious interference with business relationships, and malpractice.  (*See* MTD at 6-9.)  The court need not, and therefore does not, consider these claims.

ORDER - 12

reference into the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

### 2. False or Fraudulent Registration of Trademarks Under 15 U.S.C. § 1120

Section 1120 provides that "[a]ny person who shall procure registration in the [USPTO] of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120. To survive a motion to dismiss, a party bringing a fraudulent procurement claim must allege facts establishing:

> (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance.

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 5797826, at *5 (S.D. Cal. Sept. 29, 2020) (quoting *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013)); *see also In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) (A "trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the [USPTO]."). Under Federal Rule of Civil Procedure 9(b), the plaintiff must "state with particularity the circumstances constituting fraud[.]" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Here, Mr. Morton argues that Amazon cannot state a § 1120 claim because (1) Amazon "fail[s] to allege that [he] directly caused harm[,]" (2) Amazon fails to

provide "factual support" for its assertion that he "knowingly submitted or allowed submission of fraudulent trademark applications[,]" and (3) "there is no evidence that [he] intentionally filed fraudulent applications or intended to cause harm." (MTD at 7.) He further asserts that Amazon has failed to plead its claim with the "specificity required to sustain claims of fraud . . . under [Rule] 9(b)." (*Id.* at 9.) The court disagrees.

Amazon alleges, in relevant part, that Mr. Morton and his codefendants "procured the Futaiphy and Tfnyct Trademark registrations from the USPTO through knowingly false and/or fraudulent declarations and representations." (Am. Compl. ¶ 206.) Specifically, Amazon alleges that the trademark applications "were purported to have been signed by [Mr.] Morton . . . when, on information and belief, [Mr.] Morton was not actually involved in preparing, reviewing, or signing the trademark applications; the applications each contained a fabricated specimen of use that falsely purported to show use of the [Marks] in commerce when there was no such use; and the applications contained a declaration that falsely alleged that the [Marks] were in use in commerce." (*Id.*) Amazon further asserts that the USPTO issued the trademark registrations on reliance on Defendants' "false statements and representations regarding the alleged use in commerce of the applied-for marks and the fabricated specimens purportedly showing that alleged use" and that Defendants "intended for the USPTO to rely on these false statements and representations." (*Id.*; *see also id.* ¶¶ 80-97 (making detailed allegations about Mr. Morton's involvement with the false declaration and specimen submitted with the Futaiphy trademark application), 98-114 (same, with respect to the Tfnyct trademark application).) Amazon alleges that it was damaged by the false and fraudulent

ORDER - 14

procurement of the Marks "because (1) the False Takedown Defendants used the [Marks] to open . . . Brand Registry Accounts and improperly gain access to Brand Registry; and (2) the False Takedown Defendants used the [Marks] to issue fraudulent takedown notices in the Amazon Store." (*Id.* ¶ 209; *see also id.* ¶ 10 (alleging that the false takedown notices related to fraudulent trademarks led to losses to Amazon's selling partners and caused financial harm to Amazon)).)

Based on these allegations, the court concludes that Amazon has plausibly alleged the elements of its claim for fraudulent registration of trademarks under § 1120. Therefore, the court denies Mr. Morton's motion to dismiss this claim.

### 3.    Common-law Fraud based on Fraudulent Trademark Filings

Mr. Morton's motion to dismiss Amazon's claim for fraud based on fraudulent trademark filings relies on the same arguments he made in favor of dismissal of Amazon's § 1120 claim. (*See* MTD at 7, 9.)  Accordingly, the court denies Mr. Morton's motion to dismiss this claim for the same reasons it denied his motion to dismiss the § 1120 claim.

### 4.    WCPA

To state a claim for violation of the WCPA, Amazon must plausibly allege "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (Wash. 2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (1986)).  Mr. Morton argues that Amazon cannot state a WCPA claim because it fails to (1) allege that Mr.

Morton "directly caused harm" or (2) "identify any applicable consumer transactions in which [he] participated[.]" (MTD at 7; *see also* Reply at 9-10 (asserting that Amazon has not "alleged a plausible public-interest impact beyond [the parties'] individualized dispute").) Neither argument is persuasive. First, as discussed above, Amazon has plausibly alleged that Mr. Morton harmed it by filing false and fraudulent trademark registrations. And second, as Amazon points out, a plaintiff need not allege that a defendant participated in a consumer transaction to satisfy the public interest element of a WCPA claim. (*See* Resp. at 22.) To the contrary, a plaintiff "may establish that [an] act or practice is injurious to the public interest because it . . . has the capacity to injure other persons." RCW 19.86.093(3)(c). Here, Amazon has plausibly alleged that Mr. Morton's procurement of fraudulent trademarks injured Amazon sellers who were the object of false takedown notices based on the fraudulent Marks. (*See* Am. Compl. ¶¶ 8-10, 81, 99, 163, 166.) Therefore, the court denies Mr. Morton's motion to dismiss Amazon's WCPA claim.

## IV.    CONCLUSION

For the foregoing reasons, the court DENIES Mr. Morton's motion to dismiss (Dkt. # 32).

Dated this 16th day of March, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 16